## YALE LOCK MANUFACTURING COMPANY *v.* SARGENT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Argued March 12, 15, 1886.—Decided April 5, 188

Claim 1 of reissued letters patent No. 4696, granted to James Sargent, January 2, 1872, for an "improvement in locks," on an application filed September 25, 1871, the original patent, No. 57,574, having been granted to him August 28, 1866, namely, "1. In a combination lock for safe or vault doors, a bolt, *I*, which turns on a pivot or bearing, when said bolt, *I*, is used in a lock having no ordinary sliding lock-bolt, and in connection with the separate bolt-work of the door, and so arranged as to receive the pressure of the said bolt-work without transmitting it to the wheels or other equivalent works of the lock," is not invalid, as being an unlawful expansion of claim 1 of the original patent, namely, "1. The rotating tumbler *I*, when separated and isolated in action from the permutation wheels, and so arranged that any inward pressure upon the bolt will be exerted upon the bearing of

said tumbler, and have no action nor effect upon the said permutation wheels, substantially as and for the purpose herein specified."

The invention covered by claim 1 of the reissue defined, and certain prior structures held not to have anticipated it.

The defendant's lock held to be an infringement of that claim.

The plaintiff granted no licenses under his patent, but sold locks made by himself containing the invention. The defendant sold infringing locks at less prices than the plaintiff, and compelled the plaintiff to lower his prices. As the turning bolt was an essential feature in each of the two locks, and the plaintiff could not sell his patented device unless in a lock, and thus made a profit on the entire lock, and was deprived of that profit by such enforced reduction of prices : *Held,* that the infringement caused the entire loss of the plaintiff, after allowing a proper sum for any other patented device contained in the defendant's lock and for any other causes which gave to the defendant an advantage in selling his lock.

Such loss on the locks sold by the plaintiff, by the reduction of price, was allowed to the plaintiff as damages, in a suit in equity for infringement, although the defendant made no profit.

The plaintiff, as legal owner of the patent, was entitled to recover the damages, although he had a partner in making and selling the locks.

As the bill alleged infringement of the reissue generally, and the answer set up that the reissue was not for the same invention as the original patent, and one of the claims of the reissue not disclaimed before this suit was brought was invalid, as an unlawful expansion of the original patent, although the claim on which a recovery was allowed was good, this court, the patent having expired, but there having been no unreasonable delay in filing a disclaimer to the invalid claim, reversed so much of the decree below as awarded costs to the plaintiff, and affirmed it in all other respects, each party to bear his own costs in this court and one half of the expense of printing the record.

This was a suit in equity to recover for infringement of a patent. The case in stated in the opinion of the court.

*Mr. Frederic H. Betts* for appellant.

*Mr. George Ticknor Curtis,* and *Mr. Edmund Wetmore* for appellee.

Mr. Justice BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought in the Circuit Court of the United States for the Southern District of New York, by James Sargent against the Yale Lock Manufacturing Company, to recover for the infringement of reissued letters patent

No. 4696, granted to Sargent, January 2, 1872, for an "improvement in locks," on an application therefor filed September 25, 1871 (the original pate , No. 57,574, having been granted to him August 28, 1866).

The specification and drawings of the reissue are as follows:

"My invention consists in combining with the ordinary combination-wheels, and the other working parts of a combination lock which has no sliding lock-bolt, a bolt turning on a pivot or bearing, which is so isolated or removed from contact with the said wheels as to receive any pressure or strain which may be applied through the separate bolt-work of the safe or vault-door, and cut off the communication between the bolt-work of the door and the wheels or fence-lever of the lock, whereby the position of the slots in the wheels can be determined and the lock 'picked,' as can be done in most cases where the ordinary sliding-bolt is used without some mechanical device to prevent.

In the drawings, Figure 1 is an elevation of my improved lock, with the back plate removed; Figs. 2 and 3, an elevation and top view, respectively, of the pivoted bolt, the combination-wheels, the cam, and the lever work that connects them; Fig. 4, a perspective view of the pivoted bolt; Fig. 5, a similar view of the magnet and armatures; Fig. 6, a view showing the manner of applying the spindle and cam to a safe or vault door.

$A$, represents the plate of a safe door, and $B$, the case of the lock which is applied thereto. $C$, $C$, $C$, are the combination-wheels, and $D$, the operating spindle. The spindle passes through a hollow stud, $a$, of the case, and has screwed upon its inner end the cam $E$, as shown most clearly in Fig. 6. The wheels themselves rest on the stud $a$. $I$, is the bolt, turning on a pivot or bearing, $q$. Its location is such as to rest closely in the rear of the stem, $t$, of the heavy bolt-work of the door, and to hold it out when in one position, but to allow it to retract, to free the bolt-work, when in the other position, said bolt, $I$, turning on its pivot or bearing to allow this to be done. $H$ is a sliding-bar, which gives motion to the bolt as it is thrown forward or backward, being connected together by cog-teeth $p$ $r$. The bar slides on studs, $n$ $n$, by which it keeps

its horizontal position. *G* is a lever pivoted at *f*, to bar *H*, and serving to throw the latter back. It has a hook, *b*, Fig. 2, which engages with the bit, *d*, of the cam, to draw the bar back. The forward motion is given by the cam striking the end *o*, of the bar *H*. *L* is a magnet of the form shown in Fig. 5, which is suspended on a pivot, *i*. Its open end rests between armatures *h k*, which are separated by a brass pendant, *l*. The armature *h* is attached to the end of lever *G*. When the magnet is in contact with the lower armature, *h*, the dog, *g*, will be held away from the wheels; but when raised and brought in contact with the upper armature, *k*, the lever is released and the dog is then allowed to fall into the notches of the wheels, to release the bolt. The magnet is raised by a roller, *c*, of the cam, which strikes a bearing, *m*, of the magnet.

In general principle the magnet is the same as that covered by the patent of Sargent and Covert, May 2, 1865; but the construction and arrangement of the magnet and armatures are much simpler and more effective, and constitute one feature of my present invention.

An important feature in my invention is the employment of the bolt *I*, turning on a pivot or bearing, instead of the sliding-bolt heretofore in use. It is isolated, so to speak, from the combination-wheels and the other main working parts of the lock, and, therefore, any strain which is brought to bear upon it by the heavy bolt-work will be expended on the bolt itself, and not upon the wheels. In the old form of lock the sliding-bolt extends back so as to connect with or come near to the wheels, and any strain thereon is liable to disarrange the lock works.

Another important advantage of the isolation of the bolt is that it increases the difficulty of 'picking,' by being removed from all contact with the wheels. A common mode of picking ordinary locks is to force the bolt back, so as to get a contact with it and the edges of the wheels, by which their position is ascertained. In my lock this cannot occur, as the bolt simply turns on its bearing or pivot, and no back action can bring it or the lever work against the wheels.

The bolt may not only be of the circular form shown in the

drawings, but of a segmental form, which will serve the same purpose.

I am aware that the combination-wheels themselves have been made with notches, and so arranged that the ordinary sliding-bolt which rests against their edges may fall back and

within the notches, when they are all set. Such is not the equivalent of my invention, as my express purpose is to avoid all contact of the bolt with the edges of the wheels."

The claims of the reissue, five in number, are as follows, but only claim one is alleged to have been infringed :

"1. In a combination lock for safe or vault doors, a bolt, $I$, which turns on a pivot or bearing, when said bolt, $I$, is used in a lock having no ordinary sliding lock-bolt, and in connection with the separate bolt-work of the door, and so arranged as to receive the pressure of the said bolt-work without transmitting it to the wheels or other equivalent works of the lock.

2. In a combination lock for safe and vault doors, I claim the combination of the bolt $I$, bar $H$, and cog-connection $p\ r$, when said bolt, $I$, turns on a pivot or bearing, and receives the pressure of the bolt-work situated outside the lock-works, and intervenes between the bolt-work and the wheels.

3. I claim, in combination with the bolt $I$, the bar $H$ and lever $G$, arranged and operating as herein set forth.

4. I claim, in combination with the vibrating magnet, $L$, the armatures $h\ k$ and pendant $l$, arranged as herein described.

5. I claim the combination and arrangement of the wheels $C\ C$, cam $E$, lever $G$, bar $H$, and bolt $I$, as herein described."

The defences set up were want of novelty, non-infringement, and invalidity of the reissue. After a hearing on pleadings and proofs, an interlocutory decree was entered finding the reissued patent to be valid and to have been infringed, and awarding a perpetual injunction and an account of profits and damages. The master reported $7771 damages in favor of the plaintiff. The defendant excepted to the report, but the exceptions were overruled by the court and a final decree was entered for the plaintiff, for $7771 damages and $650.17 costs. The defendant has appealed to this court.

It is contended that the first claim of the reissue is void for unlawful expansion, after unreasonable delay in applying for the reissue.

The original patent had three claims, as follows :

"1. The rotating-tumbler $I$, when separated and isolated in action from the permutation-wheels, and so arranged that any

inward pressure upon the bolt will be exerted on the bearing of said tumbler, and have no action nor effect upon the said permutation wheels, substantially as and for the purpose herein specified.

2. In combination with the turning-tumbler $I$, the cog-bar $H$ and lever $G$, arranged and operating as herein set forth.

3. The combination and arrangement of the combination-wheels $C$, cam-disk $E$, pivoted lever $G$, cog-bar $H$, and turning tumbler $I$, the whole operating as herein specified."

Claim 3 of the reissue is substantially the same as claim 2 of the original, and claim 5 of the reissue is substantially the same as claim 3 of the original, while claims 2 and 4 of the reissue are new claims.

The defendant directs attention to these facts: When Sargent applied originally for his patent, on February 6, 1866, he asked for claim 1 in this form: "The turning-bolt $I$, resting on its bearing $q$, in combination with the mechanism of a combination lock, in such manner as to practically isolate or disconnect it from the main operating parts, substantially as set forth." Claim 1 having been rejected on the 24th of March, 1866, Sargent, on the 29th of June, 1866, changed the claim to the form it has in the original patent as issued, and his attorneys at the same time, in a letter to the Patent Office, explained the new form of claim thus: "The substance of the first substituted claim consists essentially in providing a rotating tumbler in connection with the bearing on which it rests and the stem of the bolt-work which rests against it, when said tumbler is isolated or disconnected from the combination-wheels, so that any inward motion of the bolt against this tumbler will expend its force against the bearing on which the tumbler turns and rests, and will not reach or affect the permutation-wheels." The attorneys also said: "In Mr. Sargent's device it will be observed that the combination or permutation-wheels are on a different bearing, and located at a distance from the revolving tumbler $I$, and never in contact therewith, so that the two are practically isolated from each other, and there is no connection between them except through the lever $H$, which is not within the reach or influence of the pick-lock." And the specification

of the original patent contained this language : " The principal advantage of this tumbler consists in its isolation, so to speak, from the combination-wheels and the main working parts. It rests alone on its bearing *q*, the only part connected being the cog-bar *H*. In ordinary locks the sliding-bolt extends back in direct connection with the main working mechanism, and by its constant action and the strain that comes upon it frequently disarranges those parts. This is especially true when the stem or projection *t* of the heavy bolt of the safe-door rests against the sliding bolt. In this case, when force is applied to the bolt, the wrenching strain upon the bolt and mechanism is very great. In my lock it will be seen that this difficulty is obviated, for any strain that comes upon the circular tumbler, either from the stem *t* or any other source, is simply expended upon the strong bearing *q*, and does not reach back to the combination-wheels or any part of the working mechanism. This is of the utmost importance."

It is urged that emphasis was thus laid on the fact that the turning-bolt or tumbler was mounted on a different bearing from the permutation-wheels, and that it was that arrangement which prevented pressure on it from reaching back to the permutation-wheels; that the original claim, in speaking of the rotating tumbler as " separated and isolated in action from the permutation-wheels," meant that it was mounted on its own separate bearing, and did not allow of its being mounted in any other way; that the specification of the reissue does not say that the tumbler *I* " rests alone on its bearing, *q* ;" that the limitation thus contained in claim 1 of the original patent is not found in claim 1 of the reissue ; and that thereby an unlawful expansion was made, the application for the reissue having been filed more than five years after the original patent was granted.

But we think the reissue is not fairly open to this objection. The tumbler in the one claim and the bolt in the other are the same instrument. The words " rotating-tumbler *I*," in the original claim, refer to the tumbler described as resting on a bearing " around which it turns." The claim of the reissue, in saying that the bolt *I* " turns on a pivot or bearing," expresses

the same idea. The words in the claim of the reissue, "when said bolt *I* is used in a lock having no ordinary sliding lock-bolt, and in connection with the separate bolt-work of the door, and so arranged as to receive the pressure of the said bolt-work without transmitting it to the wheels or other equivalent works of the lock," are justified by these words in the original claim, "and so arranged that any inward pressure upon the bolt will be exerted on the bearing of said tumbler, and have no action or effect upon the said permutation-wheels." The word "bolt" in the claim of the original meant what in the claim of the reissue is called "the separate bolt-work of the door," because what is called in the former "the rotating-tumbler *I*," is called in the latter "a bolt, *I*, which turns on a pivot or bearing." The proviso in the claim of the reissue that the bolt *I* is to be "used in a lock having no ordinary sliding lock-bolt" does not expand the claim, but, if anything, restricts it. The statement, in the claim of the reissue, that the bolt *I* is so arranged as to receive the pressure of the separate bolt-work of the door without transmitting it to the wheels, is justified by the statement in the original claim, that the rotating tumbler *I* is so arranged that any inward pressure upon the bolt will be exerted on the bearing of the tumbler, and have no action or effect on the permutation-wheels.

The words in the original claim, "when separated and isolated in action from the permutation-wheels," applied to the rotating tumbler, do not indicate that the mounting of the tumbler alone on its bearing is required, but mean no more than that the tumbler shall be separated and isolated in action from the wheels; and the words of the claim of the reissue have no broader meaning in that regard. If the rotating tumbler or bolt is thus isolated in action from the wheels, the arrangement referred to in both claims is reached. The patentee set forth, as he was bound to do, the method he used, and which he thought advisable; but any method of mounting the revolving bolt which effects the isolation referred to is within either claim. The words "or other equivalent works of the lock" have no expanding force.

The invention of Sargent consists in combining with the

ordinary combination-wheels, and the other working parts of a combination lock which has no sliding lock-bolt, a bolt turning on a pivot or bearing, which is so isolated or removed from contact with the said wheels, as to receive any pressure or strain which may be applied through the separate bolt-work of a safe door, and cut off the communication between the bolt-work of the door and the wheels or fence-lever of the lock, so that the position of the slots in the wheels cannot be determined, for picking the lock, as in the use of the ordinary sliding lock-bolt, which extends back so as to connect with the wheels. The turning-bolt is an incomplete cylinder, or one in which parts of the periphery are cut away. An extended part of the bolt-work of the door bears against a part of the complete periphery of the turning-bolt, in such manner that the turning-bolt receives all pressure and does not allow it to reach the combination-wheels. The ordinary sliding lock-bolt is, therefore, dispensed with.

Three alleged anticipating devices are set up—defendant's Exhibit A, defendant's Exhibits C and D, and defendant's Exhibit E.

Exhibit A has in the lock-casing a sliding-bolt, and, also, what is alleged to be a turning-bolt. But the latter is only the well-known swivelling-dog, long used to prevent the retraction of sliding-bolts, and so arranged as to be swivelled by a spring when the combination-wheels are gated. As a consequence, the stump or fence bears on the wheels not only with the pressure of its own weight but with the added force of the spring. Any swivelling force applied to the dog causes the stump to bear on the peripheries of the wheels, and the picking of the lock is facilitated. The dog prevents the retraction of the sliding-bolt. In Sargent's patent the lever which carries the stump is so constructed that no turning of the revolving-bolt can bring the lever-work against the wheels. The Sargent revolving-bolt must be acted upon by the user, while the swivelling-dog in Exhibit A is an automatic latch. In Sargent's structure the revolving-bolt, the lever which carries the stump, and the wheels, are sufficient to prevent the retraction of the bolt-work, while in Exhibit A the sliding-bolt, the swivelling-dog, the stump-lever and the wheels are all of them necessary.

The drawings Exhibits C and D show the Linus Yale lock, which is also illustrated by a lock mechanism. It is a revolving lock which permits and prevents the retraction of the bolt-work of the door, and there is no sliding-bolt. But there are no permutation wheels, or revolving-tumblers, nor any oscillating or sliding tumblers, but the ancient device of pins is used to prevent the revolution of the bolt, the pins entering into holes in the bolt; and a cross strain can be brought upon the pins, making the picking of the lock comparatively easy. Moreover, the bolt is not isolated from the pins, as it is from the wheels in Sargent's lock, but parts of the pins are in sockets in the bolt. The pins are thus in immediate connection with the bolt, while Sargent interposes lever-work between the bolt and the wheels, to effect the isolation of the bolt.

In the Butterworth padlock, Exhibit E, there is a revolving-bolt combined with the wheel-tumblers by means of a lever, but there is no "separate bolt-work of the door," which is one element of the claim in Sargent's reissue. Of this padlock the plaintiff's expert, Mr. Henry B. Renwick, says: "The padlock has the ordinary hasp attached to the case, and the bolt acts to prevent this hasp from being drawn away from the axis upon which the bolt revolves, and not to prevent bolt-works from being forced towards that same axis. The hasp is a contrivance which must be used with two staples, or one staple and a slotted bar, all of which must be outside of the door. Whereas, on the contrary, bolt-works must be inside of the door, and shoot into sockets in the jambs, it being clear that the hasp could not be used in place of bolt-works, or bolt-works in place of a hasp, even if the former were located outside of the door. I do not think that this lock would even suggest the idea of the combination referred to in the first claim of the Sargent reissue. In order to make the lock fit to be used in combination with bolt-works, even after such idea had been suggested, it would be necessary: First. To provide the lock-case with means of securing it to the door. Second. To elongate the spindle and so contrive it and the dial-plate that they could be separated from the wheel-tumblers and put together again, with the door between them. Third. To alter the direction of the slot in the

case through which the hasp enters, so that the tail of the bolt-works could press upon the revolving-bolt in the line of a radius thereof. If the tail of bolt-works were introduced into the present slot, any hammering of the bolt-works by the handle upon the periphery of the revolving-bolt would tend to turn the revolving-bolt upon its axis, and thus cause the stump to be pressed upon the wheel-tumblers in such a manner as to facilitate picking, this result being due to the fact that the line of direction through the slot is not in line of the radius to the bolt, but in line of a sector thereof; further, the revolving-bolt in a padlock, owing to its being necessary that it should enter a slot in the hasp, is weakest at the very point where it should be strongest, if it were to be used in connection with bolt-work; and any good constructor would alter the revolving-bolt of the padlock, so that it would be strongest where it is now weakest, in case it was desired to use a revolving-bolt in combination with bolt works." It is a marked feature of Sargent's lock that the direction of the pressure of the bolt-work of the door on the revolving-bolt is in the line of a radius of that bolt, so that the pressure has no tendency to revolve the bolt. This feature is not found in the Butterworth padlock.

We are of opinion that, as against anything found in the old structures, there was patentable novelty in what Sargent did and what he claimed.

As to the question of infringement, the defendant's lock, Cole No. 2, has in it a bolt which turns on a pivot, and is substantially identical with the like bolt in Sargent's patent. It prevents and permits the retraction of the bolt-work of the door in the same manner as Sargent's bolt. There is no sliding-bolt. The turning-bolt is arranged to serve as a stop to two sets of bolt-works, instead of one; but in respect to one set, there is the same mode of operation in both locks. As the claim of Sargent's reissue does not require that the bearing of the rotating-bolt should be distinct from the bearing of the wheels, the fact that in Cole No. 2 the bearing of the turning-bolt is on the stud on which the wheels turn, makes no difference in principle, because the action of the bolt is as wholly separated and isolated from the wheels in the one lock as in the other, and in

each the strain from the bolt-work is expended on the turning-bolt and not on the wheels. So, too, the fact that in Sargent's patent the fence-lever is connected with the turning-bolt by a rack on the end of the lever engaging with cog-teeth on the bolt, while in Cole No. 2 the end of the lever is pivoted directly to the turning-bolt, does not affect the identity of the arrangement as part of the combination covered by claim 1 of the reissue. The defendant's lock must be held to infringe that claim.

On the question of damages, the defendant contends that there was no sufficient or legal proof that the plaintiff suffered the damages reported and adjudged, or any other damages. The action of the master, the character of the exceptions to his report, and the view taken by the Circuit Court, are fully shown by its opinion, reported in 17 Blatchford, 244, which was as follows :

"The master reports that there is no basis, from the proofs adduced before him, to find what profits have been made by the defendant by the use of the ' turning-bolt ' (the infringing device) in the locks made and sold by it; and that, therefore, on the testimony before him he cannot find what profits, if any, are due from the defendant for the use of the ' turning-bolt.' "

" The patent on which this suit is brought is a reissue granted January 2, 1872. The master reports that, after that time, and in 1873, in consequence of the defendant's offering and selling to the plaintiff's principal customers and to the trade generally, locks containing the infringing device, at a less price than the plaintiff was obtaining, a reduction of prices was enforced on the plaintiff, such reduction being, in round numbers, $1 on each No. 5 lock and $2 on each No. 3 lock. Exception one of the defendant is to such finding and report, and alleges that the master should have reported that no such reduction was enforced, and that there was no proof of the amount of any reduction caused by the defendant's infringement, and that there was no method of computing such reduction, even if it actually existed.

" The master also reports, that it is in evidence, that, during

the period covered by the accounting, the plaintiff could have manufactured, in addition to the locks he did manufacture, and without materially increasing his manufacturing facilities, all the locks manufactured and sold by the defendant. Exception two of the defendant is to such finding and report, and alleges that the master should have reported that no such additional manufacture by the plaintiff was possible, or that it was impossible without a very great extension of his facilities.

"The master also reports, that it is in evidence, that, during the period covered by the accounting, the plaintiff would have made sales to many of the persons who were induced to purchase from the defendant, at his own established prices, had not the defendant offered its locks at lower prices. Exception three of the defendant is to that part of the report, and alleges that the master should have found and reported that no such sales would have been made, or that, even if made, they would not have been at the plaintiff's own established prices.

"The master also reports, that the plaintiff has suffered damage in respect to the matters to which exceptions two and three relate. Exception four of the defendant is to that part of the report, and alleges that the master should have found and reported no damage whatever from the competition of the defendant.

"The master further reports, that the locks sold by the defendant contained, in addition to the 'turning-bolt,' a device patented by the Rosner patent, for which infringement a claim is made against the defendant in another suit; that, as to the proportion of the reduction of prices above set forth, which should be allowed to the device claimed under the Rosner patent, it is claimed by the plaintiff, and nowhere effectually disputed by the defendant, 'that, in computing the profits on these locks, one-third belonged to and was charged by him to the Rosner patent;' and that, admitting this proportion, and allowing, in addition thereto; for any superior external attractions of the defendant's locks, and for the number of combinations which they had over those of the plaintiff, and for the shape of the case of the lock, and for the commercial success of the defendant in effecting sales, where the plaintiff would

have failed, the master is of opinion that the plaintiff is entitled to recover from the defendant, as damages, one-half of the amount of the reduction in prices caused by the defendant since January 2, 1872; that is, on 1009 No. 3 locks, $1 per lock, being $1009, and on 13,524 No. 5 locks, at 50c. per lock, $6762, being a total of $7771. Exception five of the defendant excepts to the finding and report that the plaintiff is entitled to recover from the defendant, as damages, one-half of the amount of the reduction in prices caused by the defendant since January 2, 1872, and alleges that the master should have reported 'no reduction in prices, or no proof of such,' caused by any infringement by the defendant since said date, and 'hence no damages' to the plaintiff, 'and, consequently, no method of calculating them.' Exception six of the defendant excepts to the report for that the master erred in making the apportionment of the alleged reduction in the plaintiff's prices, charging one-half thereof to the alleged infringement of the 'turning-bolt' patent, and alleges that no basis existed, in the proof or in law, for such or for any apportionment, or for any award of damages. Exception seven of the defendant excepts to the report for that the master erred in assessing damages which are not the damages suffered by the plaintiff, but are those suffered by the firm of Sargent &. Greenleaf, and alleges that the master should have reported that the damage, if any, found to have been suffered by said firm, is not the damage of the plaintiff, who is only one member of said firm, but that the plaintiff's damage is merely a portion thereof. Exception eight of the defendant excepts to the report for that the master erred in finding and reporting, as damages, the sum mentioned in his report, or any damages whatsoever, and in not reporting that there was no proof of any actual damage suffered by the plaintiff from the alleged infringement.

"The defendant contends that the competition of the defendant was not the sole cause of the reduction of the plaintiff's prices, and that the proportionate effect of the defendant's competition is not attempted to be estimated or ascertained by the proofs. It alleges that the defendant is not responsible for the reduction made in 1873; that there were many other causes

which contributed to this reduction; and that the lowering of prices was caused principally by the competition of other fire-proof safe lock-makers, and, notably, the New Britain Lock Co., by the fact that safe-makers were making and threatening to make their own safe locks, and by the general lowering of the prices of material and labor and the depression of business.

"Reduction of prices, and consequent loss of profits, enforced by infringing competition, is a proper ground for awarding damages. The only question is as to the character and sufficiency of the evidence, in the particular case. I think that, on the whole evidence, the reduction of prices by the plaintiff, after January 2d, 1872, on safe locks containing his invention, is shown to have been directly and solely caused by the defendant's infringement.

"The master, in his report, allows damages only for the reduction of prices on the locks sold by the plaintiff, that is, 1009 No. 3 locks and 13,524 No. 5 locks. Although the master states that the plaintiff suffered damage in losing the sale of locks sold by the defendant, he awards no damages for that cause. He confines his award to the loss on the locks which the plaintiff sold.

"The defendant also contends, that the plaintiff is not entitled to recover from the defendant, as damages, the entire amount of the reduction enforced by the defendant's competition, but only the damages occasioned by the effect of the presence of the infringement; that the burden of proof is on the plaintiff to fix the value of, and to separate the effect of, the infringing devices; that he failed to do so by any proper proof; and that no basis was afforded to the master on which such damages could be computed. But, as the master allowed damages only for the reduction of prices on the locks sold by the plaintiff, and as the essential feature of those locks was the 'turning-bolt' device, and as an essential feature of the infringing locks was the infringing 'turning-bolt' device in them, and as the plaintiff could not sell his 'turning-bolt' device unless it was embodied in a lock, and as he was thereby enabled to make his profit on the entire lock, and as he was deprived, by the acts of

the defendant in selling at low prices locks containing the pat-ented 'turning-bolt' device, of the profit he would otherwise have made on the locks which he actually sold containing the 'turning-bolt' device, it seems plain that the defendant's infringement must be held to have caused the entire loss of the plaintiff by the reduction of prices, after allowing a proper sum for any other patented device contained in the defendant's locks and for any other causes which gave to the defendant an advantage in selling its locks. This is the basis on which the master proceeded, and it seems to me, on a consideration of the evidence, that the master has made all proper allowances and has arrived at a correct conclusion in fixing, as damages, one-half of the amount of reduction in prices.

"The plaintiff, as the owner of the patent, is entitled to recover the damages in this case. He may be accountable to his copartner for a part of them, but the copartner could not sue on the patent, for such damages or any part of them."

This is a case where the patentee granted no licenses, and had no established license fee, but supplied the demand for his lock himself, and was able to supply that demand. The market for the lock was limited to safe-makers. No one but a safe-maker wanted or would buy such a lock. The master was unable to determine, from the proofs, what profits, if any, the defendant had made from the use of the turning-bolt. He disallowed all items of damage from the loss to the plaintiff of the sale of infringing locks sold by the defendant, and confined his award to the enforced reduction of price on the locks which the plaintiff sold, caused by the infringement. That this is a proper item of damages, if proved, is clear. It is a pecuniary injury caused by the infringement, and is the subject of an award of damages, although the defendant may have made no profits and the plaintiff may have had no established license fee. As the plaintiff, at the time of the infringement, availed himself of his exclusive right by keeping his patent a monopoly, and granting no licenses, the difference between his pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred, is to be measured, so far as his own sales of locks are concerned, by the dif-

ference between the money he would have realized from such sales if the infringement had not interfered with such monopoly, and the money he did realize from such sales. If such difference can be ascertained by proper and satisfactory evidence, it is a proper measure of damages. The damages to be recovered, Rev. Stat. §§ 4919 and 4921, are "actual damages;" and they may properly include such losses to the plaintiff as were allowed in this case. *McComb* v. *Brodie,* 1 Woods, 153, 161; *Philp* v. *Nock,* 17 Wall. 460, 462.

The turning-bolt was the essential feature of the Sargent lock. The defendant adopted Sargent's arrangement, and then reduced the price of the lock, forcing Sargent to do the same, in order to hold his trade. The evidence shows that the reduction of prices by Sargent was solely due to the defendant's infringement. The only competitor with Sargent in the use of his turning-bolt arrangement, during the period covered by the accounting, was the defendant.

We think the master made proper allowances for all other causes which could have affected the plaintiff's prices; that the proper deduction was made for the use of the Rosner device in the defendant's lock; and that the damages awarded are no greater than the testimony warranted.

The decision that the plaintiff, as owner of the patent, was entitled to recover the damages, was correct.

The bill alleges infringement of the reissue generally and especially of the first claim. The answer alleges that the reissue is not for the same invention as the original patent. The defendant contends that this is true as to claims 2 and 4 of the reissue, and that, as no disclaimer of those claims was entered at the Patent Office before this suit was brought, the recovery in this case should have been without costs, under the provisions of §§ 4917 and 4922 of the Revised Statutes, and the decision in *Gage* v. *Herring,* 107 U. S. 640, 648. That case holds that the invalidity of a new claim in a reissue does not impair the validity of a claim in it which is only a repetition and separate statement of a claim in the original patent. It also holds that a reissued patent is within the letter and the spirit of the provisions of §§ 4917 and 4922; and that, where a

defendant has infringed such a re-stated valid claim of a re-issue, the plaintiff, on filing a disclaimer of the new and invalid claims of the reissue, may have a decree, without costs, for the infringement of such valid claim, where there has been no unreasonable delay in entering the disclaimer.

There can be no doubt that claim 4 of the reissue was invalid, as an unlawful expansion of the original patent, on an application for the reissue filed more than five years after the original patent was granted. But the patent has expired, and, therefore, no disclaimer can now be filed. There was no unreasonable delay in filing a disclaimer, as the validity of claim 4 was sanctioned by the Commissioner of Patents in granting the reissue, and this suit was commenced in July, 1872, and the claim was not held invalid by the Circuit Court (both the interlocutory and final decrees having been entered before the decisions of this court, at October Term, 1881, on the subject of reissued patents were made). The result, therefore, is, that

*The decree below must be reversed as to the award of costs, and affirmed in all other respects, with interest until paid, at the same rate per annum that decrees bear in the courts of the State of New York, and the case be remanded to the Circuit Court, with a direction to modify the decree accordingly. Each party will bear his own costs in this court and one-half of the expense of printing the record.* Silsby v. Foote, 20 How. 378, 387.