CRAFT-STONE, Inc., v. ZENITHERM CO., Inc.

Circuit Court of Appeals, Third Circuit.
September 24, 1927.

Rehearing Denied November 1, 1927.

No. 3528.

1. Patents ⚖=328—No. 1,183,694, claims 1 and 4, for fireproof insulating building material and process for making same, held valid and infringed.

Sutter patent, No. 1,183,694, claims 1 and 4, for fireproof insulating building material, and process of making same, *held* not anticipated, valid, and infringed.

2. Patents ⚖=26(1¼)—Bringing together for first time of different elements into unitary whole, forming new product, is patentable.

Bringing together for the first time of different elements into a unitary whole forming a new and useful product, is patentable.

3. Patents ⚖=229—Transposition of some steps in patented process, which does not change principle or result, does not avoid infringement.

Transposition of some steps in patented process, which does not change the principle, mode of operation, or result, does not avoid infringement.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Suit in equity by the Zenitherm Company, Incorporated, against Craft-Stone, Incorporated. Decree for complainant and defendant appeals. Affirmed.

Walter W. Burns, of Washington, D. C. (Merritt Lane, of Newark, N. J., and Robert Watson, of Washington, D. C., of counsel), for appellant.

Fred J. Bechert, George H. Mitchell and Mitchell & Bechert, all of New York City, for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from a decree adjudging United States letters patent No. 1,183,694, issued to Balthasar Sutter, to be valid and infringed.

The defendant has brought the case here for review on fourteen assignments of error; but they all relate to two main questions: Validity and infringement. The defendant filed a counterclaim which the court dismissed; but his action in so doing is not before us, for it has not been made the subject of an assignment or discussion.

[1] The patent relates to new and useful improvements in fireproof insulating building material and the process of producing the

22 F.(2d)—26

same. We have, therefore, a patent for a process and a product. It has nine claims, only two of which, the first and the fourth, are in issue. The first claim is for the process and the fourth for the product.

The process consists in mixing granulated vegetable and mineral matter in its natural state, such as wood chips or shavings, with granulated mineral matter—powdered magnesite—until each particle of vegetable matter is coated with the mineral matter. Then these chips or shavings coated with magnesite are mixed with a binder solution of magnesium chloride. The magnesite or magnesium oxide and magnesium chloride form a cement which lightly coats the wood particles, leaving them in a loose, nonhomogeneous, and incompacted state. This loose mass or aggregation of coated wood particles is put into a mold so as to form a layer of uniform thickness, which is then compressed, under a pressure of about 2,500 to 3,000 pounds per square inch, into a homogeneous mass; the cement being permitted to set so as to form a solid slab, mainly made from the wood particles which have been crushed and brought into intimate contact with each other, with a minimum amount of cement holding them together.

This product may be sawed, nailed, or otherwise worked as wood. Yet it is light, fireproof, strong, nonhygroscopic, possesses high insulating and sound-deadening properties, will not warp, and is well adapted to use on floors and interior and exterior walls. There seems to have been no product just like it before.

The plaintiff company had two men in its employ, Mr. George C. Wilson, its sales manager, and Mr. Thomas Garvin, a salesman. After working for the plaintiff for some time and, one or both, becoming more or less acquainted with its process and product, and the names and location of its customers, they left its employ and early in 1925 incorporated the defendant, Craft-Stone Corporation. Mr. Wilson became its president and Mr. Garvin its vice president. They began to manufacture an insulating building material which the plaintiff says is substantially identical with its own in character and was made by practically the same process.

The primary question is validity. None of the many patents of the prior art upon which the defendant relies had taught the world the art of coating granulated, vegetable matter in its natural state with granulated mineral matter, and then of compressing this loose, nonhomogeneous mass into a solid, homogeneous, useful slab having characteris-

tics of both wood and stone. There seems to be some controversy between the District Court and appellant as to whether or not the appellant's "best reference is the Mattison patent, No. 898,381," or whether "the nearest approach to defendant's process is found in Bidtel, 827,286." However that may be, the proofs show that there never was a product on the market like Zenitherm before the invention of the patent and none since except that of the defendant. Judge Bodine, after carefully analyzing the Mattison patent, defendant's best reference, said: "The Mattison floor differs in no essential from any other magnesite floor. Neither Mattison's product nor his process has the slightest resemblance to Dr. Sutter's invention." In the Mattison floor, there was a layer of cork coated with Sorel cement; then a layer of wood splinters bound together with Sorel cement and troweled; the next and last layer was of wood flour, asbestos, and Sorel cement troweled to form the finishing floor surface. This invention neither in process nor product anticipates the invention of Sutter's patent.

The defendant said: "The nearest approach to defendant's process is found in Bidtel, 827,286." If the defendant's process is substantially identical with that of plaintiff's, which we will later discuss, we would expect Bidtel to anticipate it.

What Bidtel claims to have invented are "certain new and useful improvements in magnesia cement," which "consists in mixing a concentrated solution of chloride of magnesium, sawdust, or other suitable filler, preferably of a porous nature, which will absorb the solution." Such a filler remains moist and difficult to handle. To overcome this, he added infusorial earth or fossil flour, which forms a coating over the particles of the filler, absorbs the moisture and renders the mixture dry and easy to handle. After the cement has been shipped to the point where it is to be used, Bidtel there adds to the mixture finely pulverized burnt magnesite and water which effects the chemical reaction necessary to cause the mass to set and become hard. The proportions of these ingredients are stated in his claims as follows:

"1. The combination of substantially thirty-six parts by weight of sawdust, eighty-five parts of magnesium chloride solution (36.8° Baume) and twenty-five parts of infusorial earth, forming a substantially dry ingredient of magnesium cement.

"2. The herein described composition of matter, which consists substantially of thirty-six parts by weight of an absorbent filler, eighty-five parts of magnesium chloride solution (36.8° Baume), twenty-five parts infusorial earth, seventy-five parts pulverized burnt magnesite, and forty-three and one-half parts water."

The plaintiff's product has three ingredients: Granulated cork, wood chips, shavings, or other vegetable matter; magnesite or other granulated mineral matter; and a binder solution of magnesium chloride, acetyl cellulose, etc. The process by which the patentee made his product had three steps: (1) Mixing the shavings with magnesite until they were coated; (2) mixing coated shavings with a binder solution of magnesium chloride, which produces a loose nonhomogeneous mass; and (3) compressing by regulated— "sufficient" but not "excess"—pressure this loose mass into a homogeneous mass.

The invention lies in the creation and compression of this loose, nonhomogeneous mixture of mineral-coated vegetable matter into a homogeneous mass of artistic appearance and useful qualities. Whatever may be said about the different constituent elements used by the plaintiff and Bidtel, the latter did not have the third and important element of the plaintiff's process. This the defendant admits, but says that the state of the art permits the use of pressure with any Sorel cement process. The patentee invented a new and useful product, and it is not permissible for an infringer to go to the prior art and defeat the patent by selecting the various elements of the patentee's process from different patents, bring them together, and say that this aggregation anticipates. Knowledge after the event is always easy, and problems once solved present no difficulties. Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177; Diamond Rubber Co., etc., v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527.

Many other patents were cited to show that the Sutter patent was anticipated and is invalid. We have examined them, together with argument of counsel bearing on them, but do not think that they anticipate the patent in issue here. The Sorel patent, No. 100,945, is an illustration of the many patents cited. Counsel says: "The ingredients of Zenitherm product are all mentioned by Sorel; the steps of the process are the same, and the order of the steps is the same." If this is true, anticipation is unescapable. Sorel's own statement in describing his process disproves defendant's contention:

"I throw into a furnace the natural rock magnesite, and subject it to a red heat from

one to fifty hours; I prefer for general use about twenty-four hours; I pulverize what remains. I use this product, or the magnesia of commerce, according to convenience or economy, which may depend, in part, upon the place where the cement is made and in part upon the result proposed. I thoroughly mix with the magnesia, however obtained, any mineral substance, as sand, gravel, the dust and fragments of marble and other stones, emery or other grits, or cotton, wood, or other fibrous material, according to the result desired. The proportion of such substances varies with the work to be done, from one-half to twenty or more to one. This mixture is then moistened with a solution of either of the following substances of the density of from 20° to 30° Baume, instead of the chloride of magnesium or the bittern water, as described in my said patent, viz. chloride of barium, chloride of strontium, chloride of aluminum, chlorhydrate and bisulphate of ammonium, sulphate of magnesia, sulphate of aluminum, solutions of potash or of soda, or of the carbonates of these bases, as well as by the solutions of most of the double chlorides and other double salt containing salts with magnesia basis. These solutions can be employed singly or mixed together, or with the chloride of magnesium. They are employed more or less concentrated, according to the nature of the cement desired to be obtained. The mixture is wet sufficiently, in some cases, to form a mortar, and in some cases only to produce a dampness like that of molding sand when prepared for use. The plastic substance thus formed is then poured, pressed, or rammed into molds, or rolled or spread in slabs or sheets, or other form required, and soon sets, and forms hard, strong, and durable stone or other product, partaking of the color and qualities of the substances combined."

It will serve no good purpose to analyze all the other patents. We have carefully considered them, and do not think that they anticipate Sutter.

[2] The several elements in Sutter's combination conjointly, each element acting according to the law of its own nature, produced a new floor. He was the first to bring these elements together in a unitary whole, which is therefore patentable. National Cash Register v. American Cash Register (C. C. A.) 53 F. 367; Macbeth-Evans Glass Co. v. L. E. Smith Glass Co. (C. C. A.) 284 F. 193; Blake v. Robertson, 94 U. S. 729, 24 L. Ed. 245; Lock Co. v. Sargent, 117 U. S. 536, 6 S. Ct. 934, 29 L. Ed. 954.

Did the defendant infringe? The proofs show that defendant moistens wood chips or sawdust with magnesium chloride and then mixes them or it with powdered magnesium oxide until they are coated, and thereafter mixes these coated chips with magnesium chloride, which results in a loose mixture of coated chips which are then compressed, by hydraulic pressure, into a homogeneous mass substantially identical with the plaintiff's product. Just why the vegetable material is first moistened with magnesium chloride or what final effect it has does not clearly appear.

[3] The gist and principle of the invention lie in lightly coating the chips with mineral matter and then compressing them into a homogeneous mass having the qualities described in the patent, and these the defendant's product has. The patentee had to mix the chips either with magnesite or magnesium chloride first. But the patent does not state, nor do the proofs show, any advantage in the order. So far as appears, the order might have been reversed without effect. The transposition of some of the steps in a patented process, which does not change the principle, mode of operation, or result, does not avoid infringement. Malignani et al. v. Germania Lamp Co. (C. C.) 169 F. 299; Malignani et al. v. Hill-Wright Electric Co. (C. C.) 177 F. 430; General Electric Co. v. Hill-Wright Electric Co. (C. C. A.) 174 F. 996. The defendant in our opinion uses the process and obtains the product of the patent and therefore infringes it.

The decree is accordingly affirmed.