RUTH v. CLIMAX MOLYBDENUM CO.

SAME v. SHENANDOAH–DIVES MINING CO.

SAME v. LONDON GOLD MINES CO. et al.

Nos. 1550–1552.

Circuit Court of Appeals, Tenth Circuit.
Dec. 14, 1937.
Rehearing Denied Feb. 4, 1938.

Louis E. Gelt, of Denver, Colo., for appellant.

Ivor O. Wingren, of Denver, Colo. (Barney L. Whatley, Walter E. Schwed, and Frank A. Wachob, all of Denver, Colo., on the brief), for appellees Climax Molybdenum Co., and Shenandoah-Dives Mining Co.

Forrest C. Northcutt, of Denver, Colo., for appellees London Gold Mines Co. and London Mill, Inc.

Before LEWIS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

These are three separate actions for alleged infringement of letters patent No. 1,-277,750, issued to Jackson A. Pearce in 1918 and assigned to plaintiff. Claims 1, 3, and 5 are involved. The cases were consolidated for trial, but separate findings of fact and conclusions of law were made. The court found in each case that claims 1 and 3 were not infringed, and that claim 5 was invalid. The bills were dismissed and plaintiff appealed. Reference will be made to the parties as they appeared in the court below.

The first questions arise on motions to dismiss the appeals. The basis of the motions is that plaintiff unreasonably neglected and failed to appeal from the challenged decree or to enter an appropriate disclaimer in the Patent Office following the entry of such decree, and for such reason the alleged errors of the trial court have become moot; and that Equity Rule 75, 28 U.S.C.A. following section 723, was violated in the preparation of the record on appeal. The petitions for appeal were filed and the appeals

allowed on the eighty-ninth day after the decrees were entered. Plaintiff thereafter secured several extensions of time within which to perfect such appeals, and they were perfected within the last extension. No disclaimer was filed in the Patent Office. Sections 4917 and 4922, Revised Statutes, 35 U.S.C.A. §§ 65, 71, are relied upon to sustain the first ground of the motions. These sections were enacted as a part of the Act of March 3, 1837, 5 Stat. 191, and with slight changes they have been continued since. The first provides that whenever an inventor has through inadvertence, accident, or mistake, and without fraudulent or deceptive design, claimed more than that of which he was the original or first inventor or discoverer, he may make disclaimer of such part or parts of the thing patented as he shall not choose to claim or hold by virtue of the patent. The second provides that, although a patentee has through inadvertence, accident, or mistake, and without willful default or intent to defraud or mislead the public claimed to be the first inventor or discoverer of a material or substantial part of the thing patented of which he was not the original or first inventor, he may maintain a suit at law or in equity upon the patent, but he cannot recover costs in the action unless he filed a proper disclaimer before the institution of the suit.

As repeatedly construed, the first section requires that an inventor shall with such promptness as the circumstances reasonably permit, disclaim in the Patent Office the claim or claims which a court of competent jurisdiction has adjudged to be invalid, or that he appeal with like promptness; otherwise, the entire patent is void. The filing of such a disclaimer or the perfecting of an appeal in that manner is designed to serve two purposes. One is to preserve to the inventor that to which he is rightfully entitled, and the other is to relieve the public from the assertion of a monopoly obtained without valid basis of fact. Ensten v. Simon, Ascher & Co., 282 U.S. 445, 51 S.Ct. 207, 75 L.Ed. 453; Railway Engineering Equipment Co. v. Oregon Short Line R. Co., 10 Cir., 79 F.2d 469, certiorari denied 296 U.S. 658, 56 S.Ct. 383, 80 L.Ed. 469, rehearing denied 297 U.S. 727, 56 S.Ct. 497, 80 L.Ed. 1010. But this patent expired before the decrees were entered adjudging claim 5 to be invalid. A disclaimer filed immediately after entry of the decree could not have preserved to plaintiff anything to which he was justly en-

titled, nor relieved the public against an asserted monopolistic right which had been obtained without justification of fact. He had nothing to disclaim in which the public had an interest. A disclaimer would have been without effect, and it was not necessary. Yale Lock Co. v. Sargent, 117 U.S. 536, 6 S.Ct. 934, 29 L.Ed. 954; Walker on Patents, § 255. It cannot be said in such circumstances that appeals allowed within ninety days after entry of the decrees (the time within which application for the allowance of an appeal must ordinarily be made, 28 U.S.C.A. § 230), and perfected within duly granted extensions, should be dismissed for unreasonable neglect or delay. The case of Railway Engineering Equipment Co. v. Oregon Short Line R. Co., supra, is distinguishable. There the patent was still in effect. Here it lapsed while the actions were pending and before entry of the decrees.

Equity Rule 75, 28 U.S.C.A. following section 723, provides, in substance, that in the preparation of the record on appeal the evidence shall be stated in condensed and narrative form, and that all parts not essential to a decision of the questions presented shall be omitted. The rule is not confined to the testimony of witnesses. It applies to exhibits. Hughes v. Reed, 10 Cir., 46 F.2d 435. It was violated in the preparation of the record in these cases. Much testimony which could readily have been condensed was set forth verbatim; numerous explanations and arguments of counsel were included; and no effort was made to condense the exhibits or to omit parts of them not essential to a decision of the questions presented. The form of the record is disapproved, and counsel are admonished to comply with the rule; but there is nothing to indicate that the transgression was willful, and it is not sufficiently flagrant to require dismissal of the appeals. The motions are denied.

Coming to the merits, plaintiff challenges the finding of the court that claims 1 and 3 were not infringed. The patent relates to a process and apparatus for the separation of metaliferous ores from rock by flotation. The defendants are milling companies engaged in business in Colorado, and it is charged that they infringed the patent through the operation of their respective structures at their mills. The claims read:

"1. The herein described flotation process including aerating the pulp, overflowing the froth, maintaining the tailings in suspension by an upward circulation of the pulp in a flotation compartment, and overflowing the tailings wholly from said compartment at a substantial distance above the inlet and in proximity to the level of the overflow of the froth but separate therefrom.

"3. A flotation separating unit comprising an agitation compartment and a flotation compartment having a froth overflow, the said compartments communicating at the bottom, the flotation compartment being relatively deep and having a tailings discharge away from the unit, at a substantial distance above the inlet and in proximity to the level of the froth overflow, but separate therefrom, the unit being otherwise closed against the discharge of the tailings."

These claims were before this court in the case of Stearns-Roger Mfg. Co. v. Ruth, 10 Cir., 62 F.2d 442, which was an action by the owner of the patent against a manufacturer. Their validity was sustained on the ground of inventive genius in maintaining constant control of the pulp level without the use of valves, attained by automatic suspension of all of the tailings in circulation at the top of the separating compartment at approximately the same level as the froth overflow, and the discharge of all tailings at a point in proximity to the level of the overflow of froth, but separate therefrom. The accused structure there had a sands outlet near the bottom through which some of the tailings passed, and it was contended that on account of such difference there was lack of infringement. The court rejected the contention for the stated reason that the sands outlet was so small that only an insignificant quantity of tailings could pass through it compared with the quantity passing over the weir, and because the evidence disclosed that the discharge was not essential to the proper functional operation of the machine and that it was kept closed during actual operation; but the court further held that the claims had been so narrowed by amendment during pendency before the Patent Office that infringement would be avoided by the inclusion of a sands outlet which was essential to operation and which was actually used in commercial operation. Excerpts from the opinion of the court to that effect were quoted in our denial of an application for permisson to file an original bill in the nature of a bill of review. Stearns-Roger Mfg. Co. v. Ruth, 10 Cir., 79 F.2d 425.

Claim 1 is a process claim. Analytically stated, its elements are aerating the pulp;

overflowing the froth; maintaining the tailings in suspension by an upward circulation of the pulp in the flotation compartment; and overflowing the tailings wholly from such compartment at a substantial distance above the inlet, and in proximity to the level of the overflow of the froth but separate from such froth overflow. Claim 3 is an apparatus claim. Analytically stated, its elements are an agitating compartment; and a flotation compartment relatively deep, having a froth overflow, and having a tailings discharge away from the unit at a substantial distance above the inlet and in proximity to the level of the froth overflow but separate therefrom; the two compartments communicating at the bottom; and the unit being otherwise closed against the discharge of tailings. The claims provide that the tailings shall be maintained in suspension in the flotation compartment by an upward circulation of the pulp, and that all of the tailings shall be discharged from such compartment at a point substantially above the inlet thereto and in proximity to the level of the overflow of froth, but separate therefrom. The language is so definite and specific that it will not well bear any other interpretation. The Stearns-Roger Manufacturing Company manufactured the several structures involved here and sold them to the defendants. Some were sold and placed in use before the validity of claims 1 and 3 was sustained in the case to which reference has been made, but substantial changes were made in them after that adjudication; and the others were sold and placed in use after the claims were upheld. The court found that the several structures were equipped with valves which regulated the pulp level; that they would not operate without such valves; that each was equipped with a sands outlet located near the bottom of the machine; and that they were operated with the sands outlet open. The court further found that the structures operated by the Climax Molybdenum Company discharged through such outlets from 33⅓ to 60 per cent. of the total amount of tailings passing through the machines; that those operated by Shenandoah-Dives Company discharged through such outlets from 27 to 72 per cent. of the total amount of tailings passing through such machines; and that those operated by London Gold Mines Company and London Mills, Inc., eliminated through such outlets from 30 to 60 per cent. of the coarse sands passing through such machines.

The findings are supported by substantial evidence and no serious mistake in the consideration of the evidence is apparent. It is a familiar rule that findings made in an equity case are not conclusive, but they are presumptively correct and will not be disturbed on appeal if they are supported by substantial evidence and no serious mistake was made in the consideration of the evidence. Independent Oil Well Cementing Co. v. Halliburton, 10 Cir., 54 F.2d 900; Kretni Development Co. v. Consolidated Oil Corporation, 10 Cir., 74 F.2d 497; Clarke v. Hot Springs Electric Light & Power Co., 10 Cir., 76 F.2d 918.

Plaintiff contends that while there are apparent differences between the accused structures and the patent, they are immaterial and unnecessary, and constitute mere colorable departures from the patent which do not avoid infringement. Laying aside other dissimilarities, there are two decisive differences. First, the patent provides for maintaining the tailings in suspension by an upward circulation of the pulp in the flotation compartment, which means valveless control. That essential element was stressed before the Patent Office and in defense of the claims before this court in the earlier case against the manufacturer. The pulp level is regulated in the accused structures by valves, and valves are essential to efficient operation of the structures. Second, the patent provides that the tailings shall be wholly discharged from the flotation compartment at a substantial distance above the inlet to such compartment, and in proximity to the overflow of the froth but separate therefrom. All are discharged from the flotation compartment at that definitely fixed point. None are discharged from the agitation compartment. The accused structures operated by one of the defendants discharge from 33⅓ to 60 per cent. of all tailings through the sands outlet; those of another discharge from 30 to 60 per cent. in that manner; and those of the third discharge from 27 to 72 per cent. through that means. These tailings never reach the point of discharge specified in the patent, and they are not discharged from it. After providing for the discharge of all tailings from the fixed point in the flotation chamber, the patent provides that the unit shall be otherwise closed against the discharge of tailings. The accused structures do not discharge all tailings from the flotation chamber, and they are not otherwise closed against the discharge of tailings.

The patent does not cover a basic or pioneer invention. It is a combination patent positioned in a crowded art. The ap-

plication was rejected on reference to existing patents. In order to avoid the reference and overcome the rejection, claim 1 was amended by adding the element, "overflowing the tailings wholly from said compartment at a substantial distance above the inlet." In like manner, claim 3 was amended by adding the element, "the unit being otherwise closed against the discharge of tailings." The effect of amendments made in such circumstances is not left in doubt. It is well settled that where an applicant is compelled by the rejection of his application to narrow his claims by the introduction of a new element in order to obtain his patent, he becomes bound by the narrowed claims and cannot thereafter broaden them by dropping the added element. After a claim to a combination has been limited in that manner and the patent accepted, the claim is restricted to the specified elements, all of which must be regarded as material; and it cannot be given a larger scope by resort to the doctrine of equivalents. I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 47 S.Ct. 136, 71 L.Ed. 335; Smith v. Magic City Kennel Club, 282 U.S. 784, 51 S. Ct. 291, 75 L.Ed. 707; Ratigan v. Deckard Supply Co., 10 Cir., 91 F.2d 722. Construing the patent in harmony with these established principles, it cannot be said that the differences between the patent and the accused structures are immaterial, or merely colorable. They are substantial functional differences. There is substantial identity in result between the patent and the structures in question, but not of functional method or means in that two elements of the patent, maintaining the tailings in suspension by an upward circulation of the pulp in the flotation compartment, and discharging all tailings from that compartment at a point in proximity to the level of the overflow of froth, the unit being otherwise closed against the discharge of tailings, find no response in the structures.

Identity in result is not a sufficient test of infringement. There must be substantial identity in means of accomplishing the result. Robbins v. Ira M. Petersime & Son, 10 Cir., 51 F.2d 174; Demco v. Doughnut Machine Corporation, 4 Cir., 62 F.2d 23; Ratigan v. Deckard Supply Co., supra.

Claim 5 is in this language: "5. Flotation apparatus comprising a plurality of flotation separating units each composed of an agitation compartment and a flotation compartment, the flotation compartment of each unit except the last being arranged to have a tailings overflow from its own unit into the agitation compartment of another unit, such overflow being at a substantial distance above the inlet to the flotation compartment and approximately at the level but separate from the froth overflow, the delivery to the agitation compartment being spaced a considerable distance above the normal pulp levels therein to provide a substantial drop through air, the agitation and flotation compartments of each unit being in communication at the bottom, and means for aerating and forcing the pulp from the bottom of the agitation compartment into the bottom of the flotation compartment."

Stated analytically, the claim covers a flotation apparatus comprising a plurality of flotation separating units; each composed of an agitating compartment and a flotation compartment; the flotation compartment of each unit except the last being arranged to have a tailings overflow from its own unit into the agitating compartment of another unit, such overflow being at a substantial distance above the inlet to the flotation compartment and approximately at the level but separate from the overflow of the froth; the delivery to the agitation compartments being spaced a considerable distance above the normal levels therein to provide a substantial drop through air; the agitation compartment and the flotation compartment of each unit being in communication at the bottom; and means for aerating and forcing the pulp from the bottom of the agitation compartment to the bottom of the flotation compartment. Manifestly, the claim is merely for combining and arranging units together in such manner that the pulp and tailings overflow from one will be conveyed to the next where the flotation process is repeated. It is for an apparatus consisting of several units arranged side by side, each being substantially as described in claim 3. The arrangement of units in that order requires only mechanical skill. It does not exact or involve inventive genius.

That which requires no more than ordinary mechanical skill of the calling is not patentable invention. Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 27 L.Ed. 438; Electric Cable Joint Co. v. Brooklyn Edison Co., Inc., 292 U.S. 69, 54 S.Ct. 586, 78 L.Ed. 1131; Altoona Publix Theatres, Inc., v. American Tri-Ergon Corporation, 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005; Lyman Gun Sight Corporation v. Redfield

**704**

Gun Sight Corporation, 10 Cir., 87 F.2d 26. The court was right in adjudging the claim invalid for lack of invention.

The decrees are severally affirmed.