STUTZ *v.* ARMSTRONG and another.

(*Circuit Court, W. D. Pennsylvania.* September 1, 1885.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—DAMAGES.

Where infringement of a patented coal-washing machine was deliberate and without palliation or excuse, *held,* that the infringer was justly chargeable with the full established license fee for each infringing machine, although his use of two of them had been but for three years, and of four of them for eighteen months only.

2. SAME—MEASURE OF DAMAGES—FUTURE USE OF INFRINGING MACHINE.

While the patentee may, if he choose, confine himself to a recovery for past infringement, and insist that the further use of the infringing machine be enjoined, yet, if he elect as his measure of damages the full license fee established by himself, the payment thereof operates to vest in the defendant the right to use the machine during the life of the patent, or until that particular machine is worn out.

In Equity. *Sur* exceptions by defendants to the master's report.

*D. F. Patterson,* for exceptants.

*George H. Christy, contra.*

ACHESON, J. The force of the admission contained in the answer, as to the number of coal-washing machines built by the defendants, is not weakened by the proofs, and the master was right in finding the number of infringing machines to be six. The finding that the plaintiff's established license fee for each machine (exclusive of compensation for superintending its erection) is $350 is, I think, fully warranted by the evidence. An element thereof is the written contract of February 15, 1877, between these parties, under which the defendants' first two machines embodying the invention were erected, under the supervision of the plaintiff, for the sum of $800. In view of that contract, in connection with the other proofs, the defendants cannot very well complain that the license fee, as reported by the master, is too high.

The question most demanding discussion is raised by the sixth exception, viz.: "The master erred in assessing damages for an infringement limited to eighteen months as to four machines, and three years as to two machines, at the rate per machine of a sum which he found to be the fixed royalty for the patent term." But the master here only followed the rule, so often approved and acted upon, that where the patentee makes his patent available exclusively by the sale of licenses for its use at a fixed sum, such license fee furnishes the just measure of his damages in case of the unlicensed use of his invention. *Seymour* v. *McCormick,* 16 How. 489, 490; *Sickels* v. *Borden,* 3 Blatchf. 536; *Emerson* v. *Simm,* 6 Fish. 281; *Star Sall Caster Co.* v. *Crossman,* 4 Ban. & A. 566. This rule commends itself by its simplicity and general equity. In such cases, ordinarily the unpaid license fee is what the patentee loses by the unauthorized use of his invention; and, aside from that standard, the question of damages is involved in uncertainty, and is difficult of satisfactory solution. True,

the rule is not of universal application, as we learn from *Birdsall* v. *Coolidge*, 93 U. S. 64, where there was a reversal of the judgment of the trial court because of peremptory instructions to the jury to adopt the rule in a case where the defendant's use of the invention was limited in extent, and lasted for a very brief period of time, in no instance exceeding six weeks. The supreme court there say:

> "Evidence of an established royalty will undoubtedly furnish the true measure of damages in an action at law, where the unlawful acts consist in making and selling the patented improvement, or in the extensive or protracted use of the same, without palliation or excuse; but where the use is a limited one and for a brief period, as in the case before the court, it is error to apply that rule arbitrarily and without qualification."

How stands the present case to the rule as thus explained and restricted? Under the contract already mentioned, which expressly recognized him as the inventor, the defendants commenced the licensed use of the plaintiff's invention in two coal-washing machines. Subsequently, and, presumably, after they were satisfied with the value of the improvement, the defendants, without license, built six more of the same machines, and used them in their business; four of them, it seems, for the period of eighteen months, and two of them for three years. Now, certainly, here was an unlawful use altogether without "palliation or excuse." The defendants did not err ignorantly. There never was a more deliberate infringement. And, looking at the nature of the invention and business to which it is applied, it seems to me it may, too, fairly be said that the defendants' use was "extensive and protracted." Why should the defendants not pay the plaintiff his established license fee? Is the willful infringer to be favored above his honest competitor in business, who pays for a license to use the patented improvement? If one advisedly exercise the privileges of a licensee, shall he be heard to deny his liability to pay the fixed price for the right?

It is, indeed, urged in favor of the apportionment of the license fee that the enforced payment thereof does not confer the right to further use the infringing machine. But such is not my understanding of the law. . I think the true doctrine, and one reconciling any seeming inconsistencies in the decisions, is this: that while the patentee may, if he choose, confine himself to a recovery for past infringement, and insist that the further use of the infringing machine be enjoined, yet, if he elect as his measure of damages the full license fee established by himself, the payment thereof operates to vest in the defendant the right to use the machine during the term of the patent, or until that particular machine is worn out. *Sickels* v. *Borden*, 3 Blatchf. 536; *Suffolk Co.* v. *Hayden*, 3 Wall. 315; *Spaulding* v. *Page*, 4 Fish. 641; *Emerson* v. *Simm*, 6 Fish. 285, 286; *Birdsall* v. *Coolidge, supra; Birdsell* v. *Shaliol*, 112 U. S. 485; S. C. 5 Sup. Ct. Rep. 244. This is in harmony with the general rule that satisfaction of a judgment for the value of property wrongfully converted

transfers the title to the defendant. 2 Sedg. Dam. (7th Ed.) 421. But to place the matter beyond any future question, the decree here can be so framed as to assure to the defendants, upon making satisfaction, the future use of these machines, or such of them as still exist.

The answer alleges, and it is stated in the proofs, that after 18 months' use four of the infringing machines were "torn down." Whether this means that they were so destroyed that they could not again be set up has not been explained, and is not clear. But, assuming this to be the fact, still, under all the circumstances, I do not see that it is any answer to the plaintiff's demand for full license fees. There had already been a willful and prolonged infringement, and the tardy tearing down of the four machines was not in recognition of the plaintiff's rights. On the contrary, the defendants have seen fit to make a contest with him, and have put him to the expense of defending his patents.

I think there is no good reason here for denying the plaintiff full costs. And, upon the whole, I am of opinion that all the exceptions to the master's report should be overruled; and it is so ordered.