## TATUM et al. v. GREGORY et al.

*(Circuit Court, N. D. California.    June 9, 1892.)*

1. PATENTS FOR INVENTIONS—EDGERS—ESSENTIAL FEATURES.
    Claim 1 of letters patent No. 227,926, dated May 25, 1880, and claim 1 of letters patent No. 290,358, dated December 18, 1883, both granted to J. A. Robb for improvements in edgers, embrace and cover the essential features of the patented machine, and give it its merit, without which features it would be valueless and unsalable.

2. SAME—MEASURE OF DAMAGES—WHEN CALCULATED ON WHOLE MACHINE.
    When a patent covers only certain features of a machine and not the entire machine, if the patent features constitute the essential features of the machine and give it its merit, without which the machine would be valueless and unsalable, the damages and profits for infringement must be calculated on the basis of the entire machine, and not merely on the patented features alone.

3. SAME.
    To entitle a patentee to recover as damages for infringement the profits he would have realized if he had made the sales which were made by the infringer, he must show that he had the ability to make, and that he would have made, said sales but for the infringement.

In Equity.

Exception to a master's report.    Complainants brought suit for an injunction and recovery of damages and profits for infringement of the first claim of letters patent No. 227,926, dated May 25, 1880, and the first claim of letters patent No. 290,358, dated December 18, 1883, both granted to J. A. Robb for improvements in edgers.    The first patent covered a mechanism for laterally shifting the saws along the arbor of an edger for the purpose of regulating the distance between them, and thereby cutting different widths of boards.    The second patent covered a mechanism for simultaneously raising the upper feed rolls of an edger.    On final hearing the two claims mentioned were held to be infringed by the respondents, and the case was referred to the master of chancery to take an accounting.    See *Tatum* v. *Gregory*, 41 Fed. Rep. 142.    Accounting was taken, in which the master found that the patented features were

the essential features of the machine, and gave it its merit and value, and without them the machine was valueless and unsalable. He further found that respondents had made and sold nine edgers containing the two patented features; that the complainants granted no licenses, but kept the patent a close monopoly, and supplied the market themselves; that they owned and operated a machine shop, where the edgers were made and sold; that, if no infringement had occurred, they could and would have sold an equal number of their edgers to the purchasers who bought from respondents, and they would have made as profits on such sales $1,742.50. On the accounting respondents admitted making a profit of $900 on the infringing edgers sold by them.

*John H. Miller,* for complainants.

*John L. Boone,* for respondents.

McKenna, Circuit Judge. The patented device was invented by one Robb, and is one for shifting the saws and simultaneously raising the top feed rolls of a machine used in sawmills called an "edger." The device does not form the whole machine, but it is the essential feature; makes the merit of the new one, and the edger has no value or use without it,—is not salable without it. The case of *Yale Lock Manuf'g Co.* v. *Sargent,* 117 U. S. 536, 6 Sup. Ct. Rep. 934, applies, and damages must be adjudged on the basis of the entire edger. What are the damages? The complainants were the owners of the patent, and reserved to themselves the right of manufacture and sale. The measure of damages therefore is either the profits they would have made but for the infringing sales, together with the reduction of price on their own sales, or the profits that the respondents made. There was no reduction in the prices of their own sales. These were maintained. To enable complainants to recover their rate of profit on respondents' sales involves the two conditions that they had the ability to and would have sold their machine to the purchasers who bought of respondents. The first condition is established; the second, the master said, "does not so clearly appear." He infers it, however, from the testimony of a Mr. Smiley, a witness and employe of complainants, whom he quotes as follows: "I know that people haven't bought from us on account of our high prices, as they have said, and they placed the order with Spaulding," (meaning respondents.) This is a positive assertion that complainants lost sales by the competition of respondents, but its positiveness is abated on further examination, and the statement shown to be based on conjecture, and, so far as it asserts sales to customers of complainants, a mistake. In explanation of what he meant by lost sales, he said that parties made inquiries at complainants' store, but were deterred from purchasing by the high prices, saying "they could do better." Though claiming a good memory,—so good that it was appealed to in cases of doubt by his fellow clerks,—he was only able to remember one instance of this. One of whom he called the Korbell Bros.,—which one he did not remember,—told him that he had bought an edger of Spaulding, and the witness concluded by saying "that an examination of Mr. Spaulding's books will prove that I am

right." An examination of Mr. Spaulding's books proved that he was wrong. Mr. Spaulding did not sell to Korbell Bros. an edger. A transcript of his books showed a sale of nine edgers, but none to Korbell Bros. or to the company to which they belonged. From testimony so vague and mistaken no judgment can be formed. There was no other testimony of lost sales, and no presumption can be safely indulged in against the fact that there were other competitors of complainants besides respondents, other edgers, and other infringers. If the other edgers are conceded to have been inferior, they were cheaper, and the testimony shows were salable, and there are suits pending against other infringers. In this condition of things and the evidence it would be incurring too much risk of doing injustice to decide that plaintiffs would have made the sales which respondents made. In other words, that the purchasers from respondents would not have bought of them or another some other edger, or bought the same edger from another infringer, but would have bought of plaintiffs at a higher price; that they would not have done what the witness said they did do. I do not think, therefore, that the evidence sustains the finding of the master that plaintiffs incurred $1,742.62 damages by respondents' sales. The contention of respondents' counsel that complainants can only recover nominal damages cannot be sustained. There is proof of other damages. Respondents admit that they made a profit of $100 on each edger, or $900 in all. Therefore final decree will be entered for complainants for $900 damages, costs of suit, and the injunction will be made perpetual.