DE LASKI & THROPP CIRCULAR WOVEN TIRE CO. v. EMPIRE RUBBER & TIRE CO.

(District Court, D. New Jersey. December 12, 1916.)

1. COMPROMISE AND SETTLEMENT ☜16(1)—INFRINGEMENT SUIT—EFFECT OF SETTLEMENT WITH MANUFACTURER.

In a suit for infringement by the manufacture and sale of infringing machines, an interlocutory decree was entered in favor of complainant, but limiting the accounting and the extent of complainant's recovery to the profits which defendant had derived from the infringement. On affirmance of such decree the parties made a settlement, and entered into a stipulation that the amount paid by defendant was accepted by complainant "in full payment of all claims and demands which it may have against the defendant by reason of the defendant's infringement." *Held*, that the settlement covered only infringements of the character charged in the bill, and such damages and profits as could have been recovered under the issues in the cause, and that it did not bar a subsequent suit by complainant against a user of machines sold by the defendant, although bought before it was made.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 54–58, 62–65; Dec. Dig. ☜16(1).]

2. PATENTS ☜327—INFRINGEMENT SUIT AGAINST USER—EFFECT OF RECOVERY FROM MANUFACTURER.

The recovery by a patentee of full compensation for the making and selling of infringing articles does not entitle a purchaser to continue the use of the infringing article thereafter, and the patentee may maintain a suit against him to enjoin such further use and for an accounting at least for the profits made by such use.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 620–625; Dec. Dig. ☜327.]

3. PATENTS ☜319(1)—INFRINGEMENT—MEASURE OF DAMAGES.

The measure of damages recoverable by a patentee from an infringer, except where increased by the court under the statute, is compensation for the pecuniary loss which he has suffered from the infringement.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 578; Dec. Dig. ☜319(1).]

4. PATENTS ☜327—SUIT FOR INFRINGEMENT AGAINST USER—RIGHT TO DAMAGES.

Where a patentee makes his profit by licensing the use of patented machines made by him for a royalty, he may recover from the maker and seller of infringing machines the amount of royalties of which he has been deprived by the sale of the infringing machines, provided he can show that the purchasers would otherwise have taken licenses to use the patented machines; but in the absence of such proof the decree does not cover damages for the use of the infringing machines, and in a subsequent suit against the users he may recover such damages as he may be able to prove.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 620–625; Dec. Dig. ☜327.]

In Equity. Suit by the De Laski & Thropp Circular Woven Tire Company against the Empire Rubber & Tire Company. On final hearing. Decree for complainant.

E. Clarkson Seward, of New York City, for plaintiff.
Francis C. Lowthorp, of Trenton, N. J., for defendant.

HAIGHT, District Judge. The validity of the patent in suit was established by this court (De Laski & Thropp Circular Woven Tire Co. v. William R. Thropp & Sons Co. [D. C.] 218 Fed. 458) and the Circuit Court of Appeals of this circuit (226 Fed. 941, —— C. C. A. ——), in a suit instituted by the present plaintiff against William R. Thropp & Sons' Company (hereinafter referred to as the "Thropp Company"). The infringement now complained of is the defendant's use of two machines manufactured by the Thropp Company, and which were held in that case to infringe plaintiff's patent. In order that the questions to be decided and the conclusions which I have reached may be understood, it is necessary that the facts, as I find them, be recited in some detail.

In the early fall of 1911 the defendant purchased of the Thropp Company a tire-wrapping machine of substantially the same construction as that covered by the subsequently issued patent in suit. Shortly after the patent was granted, the defendant, upon being advised by its attorney that the machine infringed it, caused the superstructure of the machine, to which was attached upper pressure rollers which were not positively driven, and which was the infringing feature, to be removed. The machine was used in that condition for several months. On July 2, 1912, a patent was issued to Joseph W. Thropp (one of the officers of the Thropp Company) for a machine in which the upper rollers were positively driven. As set forth in the opinions in the before-mentioned case, it was claimed that these rollers did not perform the function of the pressure rollers of the machine of the patent, but merely aided the lower rollers in rotating the tire to be wrapped, and hence that the machine did not infringe. About the time that this latter patent was granted, the defendant, at the request of Joseph W. Thropp, replaced the superstructure, to which positively driven upper rollers had since been attached, on the machine which it had theretofore purchased. The defendant paid nothing for the change, it having been made, apparently, for experimental purposes. The machine thus equipped would not work properly, because the gears, which operated the upper rollers, frequently became broken. About the same time the defendant purchased another tire-wrapping machine from Thropp & Co. This, however, had no superstructure or upper rollers. Although an attempt was made to induce the defendant to purchase a machine equipped with them, it declined to do so, because it considered that the extra cost was not warranted, as its process of manufacturing tires did not require any pressure to be exerted on the tire and pressure rings during the wrapping process. The superstructure and rollers were not again removed from the first machine until after this suit was started, although the evidence is that the upper rollers were very infrequently used.

A week or so prior to the trial of the action against the Thropp Company, a superstructure with positively driven rollers was attached to the second machine, at the request of Joseph W. Thropp, for the purpose of demonstrating to the court how the machine worked and the features which distinguished it from the machine of the patent. Nothing was paid by the defendant for the addition. However, the

superstructure and rollers were not removed until after this suit was begun. The reason given by the defendant as to why they were retained is that Joseph W. Thropp told the defendant's representative to leave them on as there was "no doubt about the outcome" of that suit. The opinion of the Circuit Court of Appeals, affirming the judgment of this court, was handed down on August 9, 1915, and on September 14, 1915, this suit was begun. The very day that the subpœna was served the defendant consulted counsel, and the superstructure and upper rollers of both machines were at once removed, and have not since been used. The interlocutory decree in that case (which was prepared by plaintiff's counsel) limited the accounting and the extent of plaintiff's recovery to the profits which the defendant had derived from the infringement. No accounting, however, was ever taken; but, by a stipulation entered into on August 9, 1916, and filed in the case, the parties agreed that a judgment might be entered in favor of the plaintiff for the sum of $750, "covering profits, damages, and costs in the foregoing cause"; that an accounting should be waived, and that the plaintiff should accept such sum "in full payment of all claims and demands which it may have against the defendant by reason of the defendant's infringement." It also acknowledged receipt of the money, and directed the clerk to enter in his docket the following:

"Judgment for the plaintiff for costs, profits, and damages, seven hundred and fifty ($750) dollars. Judgment satisfied."

It is claimed that the stipulation and the payment of the money therein provided for precludes the plaintiff from any relief in this action.

[1] 1. It is contended, primarily, that the use of the two machines with the infringing features thereon, was, under the circumstances before detailed, the joint infringement of the defendant and the Thropp Company; that by virtue of the payment of the money provided for in the stipulation the plaintiff received satisfaction for all injuries sustained by it through the Thropp Company's infringements of the patent, of every character and kind; and that consequently, as the defendant and that company were joint tort-feasors in respect to the infringement now complained of (which took place before the stipulation was entered into), the plaintiff cannot, under well-settled principles, recover any damages or profits from the defendant, the other joint tort-feasor. Even if it be assumed that the use by the defendant of the machines with the infringing features was a joint infringement of the defendant and the Thropp Company (and I do not attempt to decide whether it was or not), I do not think that the stipulation and the payment of the money therein provided for bars the plaintiff from recovering profits and damages in this action. Although the interlocutory decree in the former suit limited the plaintiff's recovery to profits, as distinguished from damages, the parties undoubtedly could and did, by the stipulation, provide that the plaintiff should have both profits and damages.

The question then is: What damages and profits did the stipulation cover, or for what injury or injuries was the plaintiff compensated?

The answer, I think, must be primarily found by ascertaining whether the amount paid was to cover all kinds of infringements of which the defendant had, up to that time, been guilty. The only guide for determining this is the stipulation itself. It provides that the plaintiff shall accept the sum therein named "in full payment of all claims and demands which it may have against the defendant by reason of the defendant's infringement." It will be noted that "infringement" is used, not "infringements." Nor does it attempt to specify the kind or character of the infringement. I think it admits of no doubt that the parties intended that the stipulation was to cover only infringements of the character charged in the bill of complaint and in issue in that cause. If they had intended anything else, the natural presumption is that they would have in some way so indicated. The infringement charged in the bill was the making and selling of infringing machines; no mention was made of their use. Hence the money paid by virtue of the stipulation was not in satisfaction of the injury here complained of (the use), and therefore the rule respecting the effect of a satisfaction by one of two or more joint tort-feasors, invoked by the defendant, is not applicable.

Furthermore, and for the same reasons, I think it clear that they intended to and did settle only such damages and profits as the plaintiff would have been entitled to recover in that action upon the pleadings as they then were. The plaintiff would have been entitled to recover only such damages as it suffered and such profits as the defendant realized from infringements of the character and kind which were within the issues. I know of no rule, and my attention has not been called to any, which would permit the plaintiff to recover damages for an infringement of an entirely different character than that in issue or mentioned in the proofs before the court, by simply proving such infringement before a master to whom it had been referred to take an account of damages and profits. Any such practice would violate settled rules of judicial procedure. To adopt it in this case would be to hold that, although the only infringement relied upon in the first case, either in the pleadings or in the proofs before the court, was the making and selling of infringing machines, yet a master, on an accounting, could have determined whether or not the use by the defendant in this case of the infringing machine was the result of such actions upon the part of the defendant in the first case as to constitute the latter a joint infringer with the former. To state such a proposition seems to me to refute its soundness. For the same reasons, if for no other, the plaintiff is not precluded from recovering of this defendant the profits to which it would otherwise be entitled, simply because the defendant, in its use of the infringing machine, was a joint tort-feasor with the Thropp Company.

[2] 2. But, irrespective of the question just discussed, and assuming that, as respects the infringement now complained of, the Thropp Company was not a joint tort-feasor, the question arises whether, since the plaintiff has received all the damages and profits which it could have recovered in the first suit against the Thropp Company by reason of the latter's manufacture and sale of the infringing machines

(as it must be held that it has), it is entitled to any relief against the defendant, who has merely used one of the machines manufactured by the Thropp Company. It has been held in several cases that where, in a suit against one who has made and sold infringing articles, a patentee has already received full compensation in the same manner and to the same extent as if he had sold the patented articles himself, that the infringing articles so sold may be used by the vendees thereof free from any further claim of the patentee, or, in other words, that the vendees under such circumstances acquire an implied license to use them. Gilbert v. Bussing, 12 Blatchf. 426, 10 Fed. Cas. 348 (C. C., S. D. N. Y.); Spaulding v. Page, 1 Sawy. 702, 22 Fed. Cas. 892 (C. C., Cal.); Allis v. Stowell, 16 Fed. 783 (C. C., E. D. Wis.); Stutz v. Armstrong, 25 Fed. 147 (C. C., W. D. Pa.); Stebler v. Riverside Heights Orange Growers' Ass'n, 214 Fed. 550, 131 C. C. A. 96, L. R. A. 1915F, 1101 (C. C. A., 9th Cir.). All of these cases, except the last two, were decided prior to the decision of the Supreme Court in Birdsell v. Shaliol, 112 U. S. 485, 5 Sup. Ct. 244, 28 L. Ed. 768. But, so far as I have been able to ascertain, since the decision in that case, with those two exceptions, it has been uniformly held that recovery of such compensation from one does not entitle another, whether a purchaser or licensee, to thereafter use the infringing article without the consent of the patentee. Tuttle v. Matthews, 28 Fed. 98 (C. C., N. D. N. Y.); Kelley v. Ypsilanti, etc., Co., 44 Fed. 19, 10 L. R. A. 686 (C. C., E. D. Mich.); New York Filter Co. v. Schwarzwalder, 58 Fed. 577 (C. C., S. D. N. Y.); Philadelphia Trust, etc., Co. v. Edison Electric Light Co., 65 Fed. 551, 13 C. C. A. 40 (C. C. A., 3d Cir.). And such seems to be the proper rule to be deduced from Birdsell v. Shaliol.

It is true that it was considered otherwise in Stebler v. Riverside Heights, etc., Ass'n, supra. But it does not seem that the extract from the opinion in Birdsell v. Shaliol, which is quoted in the Stebler Case, warrants the construction there placed upon it. Mr. Justice Gray did not say, "If one person is in any case exempt from being sued * * * for using the same machine," etc., as seems to have been thought in the Stebler Case; but he said, "If one person is in any case exempt from being sued for damages for using the same machine," etc. Manifestly there is a distinction between the liability of a user being sued for damages, when all damages which the patentee has sustained have already been paid by another, and the liability of being enjoined from further use and made to respond for profits, because the former liability would permit a patentee to receive double compensation, while the latter would merely protect fully a right which the patent gives him, namely, to prevent others using the patented article without his consent, and compel an infringer to relinquish the profits which he has realized and which, in equity, belong to the patentee.

Nor do I think that the decision in Kelley v. Ypsilanti is susceptible of the construction apparently given it in the Stebler Case. The extract from it which is quoted in the latter case contains the limiting words "until the validity of plaintiff's patent and the infringement of the defendant have been judicially ascertained in one of the principal

suits." On that phase of the case it was merely said that, where a suit has been brought against a manufacturer and other suits have been instituted against purchasers from such manufacturer, it would be quite proper to stay the latter suits until the validity of the patent and the question of infringement could be determined in the former. But this is far from holding that a suit for injunctive relief could not, after the validity and infringement had been determined, be prosecuted against a purchaser simply because, in the suit against the manufacturer, the patentee had been fully compensated for the injury he had suffered.. Indeed, the decision is clear to the effect that such a suit can be maintained.

I must conclude, therefore, that even if the plaintiff has received full compensation from the Thropp Company for the damages which it sustained as a result of the latter's infringement, to the same extent as if it, rather than the Thropp Company, had manufactured and supplied the defendant with the machines which it has used, that this fact will not bar the plaintiff from some relief in this action. The remaining questions are as to the extent and nature of the relief.

3. May the plaintiff recover damages, as distinguished from profits? If it has already received full compensation from the Thropp Company in the sense before mentioned, I do not think it can recover any damages from this defendant. Birdsell v. Shaliol, supra, 112 U. S. 489, 5 Sup. Ct. 244, 28 L. Ed. 768. If it has not received such satisfaction, then clearly it is entitled to recover from the defendant any damages which it has suffered by reason of the latter's use of the infringing machines. As before stated, the stipulation must be construed to mean that the Thropp Company paid and the plaintiff received the money therein provided for in satisfaction of all damages which the latter could have recovered against the former in that suit. The plaintiff has always derived its pecuniary benefit from the patent by making machines and licensing others to use them upon the payment of a royalty, based upon the number and size of the tires wrapped on each machine. Hence the measure of the plaintiff's damages against this defendant, if the other requisites essential to the recovery thereof were proven, would be the license fees or royalties which it would have received from the defendant, had the latter used the patented machines manufactured by the plaintiff rather than the infringing machines. Seymour v. McCormick, 16 How. 480, 14 L. Ed. 1024; New York v. Ransom, 23 How. 487, 16 L. Ed. 515; Packet Co. v. Sickles, 19 Wall. 611, 22 L. Ed. 203; Clark v. Wooster, 119 U. S. 322, 7 Sup. Ct. 217, 30 L. Ed. 392; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 694. Therefore, in order to find that the plaintiff has already received full compensation from the Thropp Company, it must appear that he could have recovered those royalties in the first suit. I do not mean to hold, of course, that the plaintiff will necessarily be entitled to recover these royalties in this action, because it may be that it will be unable to prove one or more of the other essentials. But, under the construction which I have given the stipulation, the plaintiff surely cannot be held to have received full compensation, unless it would have been entitled to recover from the defendant in the

first suit all that it could presumably recover by way of damages from the defendant in this suit. If, for any reason, it should eventually develop that it cannot recover the royalties in this suit, no harm will result from permitting it to endeavor to do so.

[3, 4] It is necessary, therefore, to ascertain whether the plaintiff could have recovered these royalties in the suit against the Thropp Company. The measure of damages which a patentee is entitled to recover from an infringer (except where they are increased by the court under the statute) is compensation for the pecuniary loss which he has suffered from the infringement. Coupe v. Royer, 155 U. S. 565, 582, 15 Sup. Ct. 199, 39 L. Ed. 263; Yale Lock Co. v. Sargent, 117 U. S. 536, 552, 6 Sup. Ct. 934, 29 L. Ed. 954; Philp v. Nock, 17 Wall. 460, 462, 21 L. Ed. 679; Seymour v. McCormick, supra. As the plaintiff utilizes its patent only by licensing others to use machines manufactured by it, it is clear that the pecuniary loss, if any, which it suffered as a result of the Thropp Company's infringement, was the deprivation of an opportunity to furnish the defendant with the patented machines and to collect royalties for their use. Although it was said in Colgate v. Western Electric Mfg. Co. (C. C.) 28 Fed. 146, 147, that "royalty paid by licensees for the right to use the invention is not evidence of damages sustained by the patentee by the sale of the patented article sufficient to authorize a recovery," it does not follow that, if by a sale the patentee has been deprived of royalties which he would otherwise have received from a user, they are not the proper measure of damages against the first infringer. If the manufacture and sale or other disposition of an infringing article is the proximate cause of the loss by a patentee of royalties which he would otherwise have received from the user of a patented article, it would certainly seem to follow that he can recover such royalties from the one who manufactured and sold or otherwise disposed of the infringing article, because he would not otherwise be compensated by that infringer for the loss which he sustained as a result of the infringement.

It is no answer to say that such an infringer has invaded only one or two of the patentee's rights, namely, to make or sell; for the important question is, What damage has the patentee suffered as a result of the invasion complained of? not what right was invaded? If such damage is the deprivation of an opportunity to license another to use the patented article, and the pecuniary loss resulting therefrom, it must follow that an infringer is responsible for that damage. But merely because (and this is what I think was intended by the above-quoted expression in Colgate v. Western Electric Mfg. Co., supra) one has used an infringing article, and a patentee receives a certain royalty from those using the patented article, would not, standing alone, permit the patentee to recover from the person who made and sold the infringing article the royalty which the patentee would have received, had the patented rather than the infringing article been so used. This necessarily results from the rule that damages must be proven, and, consequently, that it is necessary, in a suit against the manufacturer and seller, or distributor, at least to show that the user would have purchased or taken a license to use the patented article

239 F.—10

had he not purchased, or otherwise acquired, the infringing article, as also that the patentee would have been able to have furnished the patented article to him. Dobson v. Dornan, 118 U. S. 10, 17, 6 Sup. Ct. 946, 30 L. Ed. 63; Brookfield v. Novelty Glass Co., 170 Fed. 960, 96 C. C. A. 127 (C. C. A., 3d Cir.); Rose v. Hirsh, 94 Fed. 177, 179, 36 C. C. A. 132, 51 L. R. A. 801 (C. C. A., 3d Cir.); Tatum v. Gregory, 51 Fed. 446, 447 (C. C., N. D. Cal.); Bell v. U. S. Stamping Co., 32 Fed. 549, 551 (C. C., S. D. N. Y.); Roemer v. Simon, 31 Fed. 41 (C. C., S. D. N. Y.); Hall v. Stern, 20 Fed. 788 (C. C., S. D. N. Y.); Zane v. Peck, 13 Fed. 475, 476 (C. C., Conn.).

The evidence in this case quite conclusively shows that the defendant would not have used the patented machines, even if it had not acquired the infringing machines. Therefore the plaintiff could not have recovered the royalties on the two machines used by the defendant from the Thropp Company. If they can be recovered in this suit, then the plaintiff did not receive, through the settlement, full compensation for the loss which it may have suffered from the making and distributing of the infringing machines. It is therefore entitled to recover in this action such damages as it may be able to prove that it has suffered as a result of the defendant's use of the infringing machines.

4. Plaintiff is undoubtedly entitled to recover whatever profits the defendant realized from the use of the infringing machines, if it elects so to do, irrespective of the recovery of damages from the Thropp Company. It was so held by the Circuit Court of Appeals of this circuit in Philadelphia Trust, etc., Co. v. Edison Electric Light Co., 65 Fed. 551, 554, 13 C. C. A. 40.

5. As before shown, plaintiff is entitled, under any aspect of the case, to an injunction against the further use of the infringing machines by the defendant, unless the fact that defendant has ceased to use them is a sufficient reason for withholding it. This latter fact has not been generally considered such a reason, and I fail to see anything in this case which would take it out of the general rule. If the defendant does not intend to use the infringing features on the machines which it has, no harm will come to it from a decree specifically forbidding it from doing so.

Plaintiff will therefore be awarded the usual decree for an injunction and an accounting for profits and damages. The decree will carry costs.