## DOWAGIAC MFG. CO. v. DEERE & WEBBER CO.*

## DEERE & WEBBER CO. v. DOWAGIAC MFG. CO.

(Circuit Court of Appeals, Eighth Circuit. September 11, 1922.)

### Nos. 5984, 5985.

1. **Patents ⊚�longrightarrow327—Recovery against manufacturer of infringing article does not bar suit against his vendees.**

   Recovery against the manufacturer of an infringing article for profits in making and selling it does not prevent the patentee from proceeding against the manufacturer's vendee for an accounting, if he had made a profit, or for damages, or for an injunction.

2. **Patents ⊚⟶327—Recovery of profits made by manufacturer of infringing article not a bar to suit against its vendee.**

   Recovery from the manufacturer of an infringing article of profits only, made from its manufacture and sale to a jobber, is not a bar to a suit against the jobber for profits made on resales and damages.

3. **Patents ⊚⟶327—Joint infringers, who make separate profits, are severally liable therefor.**

   Where there has been a complete recovery against one joint tort-feasor, and satisfaction of the same, there cannot be a recovery against another for the same thing; but in case of joint infringers of a patent, where each has made a separate profit, each is liable severally, for the profit made by him.

4. **Patents ⊚⟶327—Damages and profits may be recovered from different infringers in separate suits.**

   Under Rev. St. § 4921 (Comp. St. § 9467), both damages and profits are recoverable from infringers, but they are recoverable on different grounds, and the recovery of profits only from one joint infringer does not preclude the recovery of damages from another.

5. **Patents ⊚⟶318(4)—Apportionment of profits made by seller of infringing grain drills.**

   Complainant, as owner of Hoyt patent, for improvement in grain drills, *held* entitled to recover from defendant as profits made from sales of infringing drills 40 per cent. of the profits made on the entire drill.

6. **Patents ⊚⟶319(1)—Damages for infringement measured by reasonable royalty.**

   Where a reasonable royalty is established by the evidence for the manufacture, sale, and use of a patented invention, the patentee *held* entitled to recover as damages from the seller of infringing machines, who was not the manufacturer, a sum equal to one-third of such royalty.

7. **Interest ⊚⟶19(2)—On unliquidated damages.**

   While it is the general rule that interest is not allowed on unliquidated damages, it may be allowed where the amount due is a mere matter of computation, and the time when it should have been paid can be determined.

8. **Patents ⊚⟶318(5)—Interest on recovery for infringement.**

   Where the appellate court has made a different finding from the trial court as to profits recoverable for infringement, and has also awarded damages not allowed below, interest should date from final decree.

Appeal from the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Suit in equity by the Dowagiac Manufacturing Company against the Deere & Webber Company. From the decree, both parties appeal. Reversed on complainant's appeal, and remanded for modification.

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied December 4, 1922.

Fred L. Chappell and Chappell & Earl, all of Kalamazoo, Mich., for Dowagiac Mfg. Co.,

Border Bowman and Paul A. Staley, both of Springfield, Ohio, for Deere & Webber Co.

Before LEWIS and KENYON, Circuit Judges, and JOHNSON, District Judge.

KENYON, Circuit Judge. Two cases are submitted together, namely: Dowagiac Manufacturing Company, Appellant, v. Deere & Webber Company, Appellee, and Deere & Webber Company, Appellant, v. Dowagiac Manufacturing Company, Appellee, being a cross-appeal on the part of Deere & Webber Company. For convenience we will designate the parties as follows: Dowagiac Manufacturing Company as plaintiff-appellant, and Deere & Webber Company as defendant-appellant. This case is here on appeal from the United States District Court for the District of Minnesota, Fourth Division. The Dowagiac Manufacturing Company, plaintiff in the trial court, appealed from the court's decree, and the defendant, Deere & Webber Company, also appealed.

The case involves an accounting because of the alleged infringement of United States letters patent, No. 446,230, issued to Will F. Hoyt, February 10, 1891, covering an improvement in grain drills. The Dowagiac Manufacturing Company is the assignee and owner of said patent right. The case has been in this court before and is reported under the title Deere & Webber Co. v. Dowagiac Manufacturing Co., 153 Fed. 177, 82 C. C. A. 351. Some of the questions here involved were also in the case of Dowagiac Manufacturing Co. v. Minnesota Moline Plow Co., 183 Fed. 314, 105 C. C. A. 526, which case was appealed to the Supreme Court of the United States, and the accounting in this case was permitted to rest until the determination of that case by the Supreme Court. The same is reported in 235 U. S. 641, 35 Sup. Ct. 221, 59 L. Ed. 398. After that decision of the Supreme Court plaintiff-appellant moved to proceed with this accounting. A suit was brought by the American Seeding Machine Company, assignee of Brennan & Co., in the United States District Court for the Western District of Michigan, Southern Division, asking an injunction against the further prosecution of the accounting in this case. That case eventually reached the United States Circuit Court of Appeals for the Sixth Circuit, and is reported as American Seeding Machine Co. v. Dowagiac Manufacturing Co., 241 Fed. 875, 154 C. C. A. 577. The relief asked was denied.

The trial court proceeded with the accounting in this case and referred the matter to the regularly appointed master in chancery, H. S. Abbott, who filed his report recommending that plaintiff-appellant, Dowagiac Manufacturing Company, be awarded one-fourth of the profits of defendant-appellant, Deere & Webber Company, in selling 5,171 grain drills which infringed the Hoyt patent, being the sum of $11,916.96; Or, in the alternative, $19,364 damages as a reasonable royalty, which also included interest; and, further, if the court found the complainant not entitled to interest, that the sum of $6,206 should

be awarded as damages. The court adopted the master's report as to the apportionment of profits and entered decree and judgment therefor. In the memorandum opinion the trial court said:

"I have adopted the master's findings as to profits as the basis for the decree, not because I do not think his findings as to reasonable royalty are supported by substantial evidence, but because the evidence as to profits seems to me to contain fewer uncertain elements, and the conclusions reached on that basis will, I think, do justice between the parties. The total amount of net profits made by the infringing defendant is not disputed, being, as found by the master, $47,667.83. Of this amount the master has found that the plaintiff is entitled to one-fourth."

Deere & Webber Company in its cross-appeal set forth that in July, 1900, plaintiff-appellant commenced suit in the United States Circuit Court for the Western District of Kentucky against Brennan & Co., manufacturers of the infringing machines; that upon the accounting the Circuit Court awarded nominal damages only. This decree was reversed by the Circuit Court of Appeals for the Sixth Circuit, and plaintiff-appellant was awarded the sum of $16,992.55, with interest, said sum being the entire profits made by Brennan & Co. This included the identical drills sold by Deere & Webber Company, and for which accounting and damage is asked in this case. There was also recovery of $1, nominal damages. Said award was paid in full in September, 1908, and defendant-appellant claims that Brennan & Co. were joint infringers with them, and, there having been a satisfaction of judgment against Brennan & Co., they as joint infringers and joint tort-feasors are released.

## I. Cross-Appeal.

[1] The questions involved in the cross-appeal should first be determined, for if the position of defendant-appellant is sustained it is decisive of the case. Briefly stated, the claims of defendant-appellant are: First, that the recovery and satisfaction of a judgment against Brennan & Co. for profits for the manufacture of the infringing drills released the jobber or user for infringement of the same article; second, that Brennan & Co. and Deere & Webber Company were joint tort-feasors, and that the recovery against Brennan & Co., one joint tort-feasor, and satisfaction thereof for the profits arising from infringement by the manufacture and sale, releases Deere & Webber Company, joint infringer. Defendant-appellant states it in his brief as follows:

"We have no desire to argue that general proposition; for we are content to rely upon the single proposition that, in the case of joint infringers, the satisfaction of a judgment against one for the profits arising from the joint infringement will release all the other joint infringers."

The first proposition is not strongly urged, and apparently little relied on. Many cases could be cited supporting the doctrine. Steam Stone Cutter Co. v. Sheldons et al. (C. C.) 15 Fed. 608; Allis v. Stowell (C. C.) 16 Fed. 783; Steam Stone Cutter Co. v. Sheldons (C. C.) 21 Fed. 875, 878; Stutz v. Armstrong (C. C.) 25 Fed. 147; Stebler v. Riverside Heights Orange Growers' Ass'n et al., 214 Fed. 550, 131 C. C. A.

96, L. R. A. 1915F, 1101. In Allis v. Stowell (C. C.) 16 Fed. 783, 787, the court says:

"These adjudications indicate the law to be that, where a patentee recovers from an infringing manufacturer full damages and profits on account of the infringement, the purchaser from such manufacturer, who is a user of the machine, will be protected in such use against a suit for infringement, as he would be if he were a licensee from the patentee."

It will be noted the term "full damages and profits" is used.

In Steam Stone Cutter Co. v. Sheldons, 21 Fed. 875, at page 878, the court stressed the point of a recovery for sale and use, and distinguished between profit for use and profit of sale for use, and uses the language:

"Where an owner of a patent has compensation for the sale of a specific machine embodying the invention, that machine is forever freed from the monopoly. * * * A compensation by recovery in an action for the same thing should have the same effect."

In Stebler v. Riverside Heights Orange Growers' Ass'n et al., 214 Fed. 550, 554, 131 C. C. A. 96, L. R. A. 1915F, 1101, it was said by the court:

"When final judgment is entered against the defendants pursuant to the accounting which has been ordered against them, the plaintiff will receive thereunder full compensation for the use of the machines by the vendees of the defendants herein for such period as they are capable of being used, in the same manner and to the same extent as he would have done had he sold the machines himself. This being true, a decree against the defendants for the profits which they received by reason of the sales of the infringing machines, together with whatever damages the plaintiff may have suffered by reason thereof, must be held to vest the right to the use of the machines in the defendants' vendees free from any further claim by the patentee."

It will be noted in this case, however, that the decree for profits, "together with whatever damages the plaintiff may have suffered," is held to free the patented article from any further claims. The theory of these cases is that by accepting part of the profits there was a waiver of the tort, and that, when the complainant had recovered judgment and received satisfaction for the tort committed, no damages could accrue to it on account of further use of that property; that by the satisfaction of judgment the machines would be freed from the patentee's monopoly. These doctrines, we believe, are contrary to the general weight of accepted opinion and to the decisions in the later cases. Since the decision of the Supreme Court of the United States in Birdsell et al. v. Shaliol, 112 U. S. 485, 5 Sup. Ct. 244, 28 L. Ed. 768, there are very few cases sustaining such doctrine. We refer to the opinions of some courts holding a contrary view. In Suffolk Co. v. Hayden, 3 Wall. 315, 320 (18 L. Ed. 76), the court says:

"A recovery does not vest the infringer with the right to continue the use, as the consequence of it may be an injunction restraining the defendant from the further use of it."

In Birdsell v. Shaliol, 112 U. S. 485, 487, 5 Sup. Ct. 244, 245 (28 L. Ed. 768), it is said:

"But an infringer does not, by paying damages for making and using a machine in infringement of a patent, acquire any right himself to the future

use of the machine. On the contrary, he may, in addition to the payment of damages for past infringement, be restrained by injunction from further use, and, when the whole machine is an infringement of the patent, be ordered to deliver it up to be destroyed."

In Callaghan v. Myers, 128 U. S. 617, 9 Sup. Ct. 177, 32 L. Ed. 547, defendant after having been charged with a profit on the original sale of a copyrighted book, and having bought back some of the books and resold them, was held liable to an accounting on the second sale.

In Kryptok Co. v. Stead Lens Co., 190 Fed. 767, 770, 111 C. C. A. 495, 498 (39 L. R. A. [N. S.] 1) the court said:

"The owner of a patent cannot recover, in a suit against a manufacturer of an infringing article which he sells to retailers, the full relief to which he is entitled in suits against the retailers, and a decree for an injunction and damages against a manufacturer is no bar to suits against those who purchase from the manufacturer and use or sell to others. Birdsell v. Shaliol, 112 U. S. 485, 488, 5 Sup. Ct. 244, 28 L. Ed. 768."

In Philadelphia, etc., Ins. Co. v. Edison Electric Light Co. of N. Y., 65 Fed. 551, 554, 13 C. C. A. 40, 43, the court says:

"But since Birdsell v. Shaliol, 112 U. S. 485, 5 Sup. Ct. 244, the law has been settled that the recovery of damages from a defendant, for manufacturing and selling, will not prevent the recovery of other substantial damages from the defendants' vendees, for their profits upon reselling the patented articles."

In De Laski & Thropp C. W. T. Co. v. Empire R. & T. Co. (D. C.) 239 Fed. 139, 143, the court said:

"But, so far as I have been able to ascertain, since the decision in that case [Birdsell v. Shaliol, 112 U. S. 483), with those two exceptions, it has been uniformly held that recovery of such compensation from one does not entitle another, whether a purchaser or licensee, to thereafter use the infringing article without the consent of the patentee. * * *" (One of the cases referred to is that cited, Stebler v. Riverside Heights Orange Growers' Ass'n, 214 Fed. 550, 131 C. C. A. 96, L. R. A. 1915F, 1101, and from which we quoted.) "Manifestly there is a distinction between the liability of a user being sued for damages, when all damages which the patentee has sustained have already been paid by another, and the liability of being enjoined from further use and made to respond for profits, because the former liability would permit a patentee to receive double compensation, while the latter would merely protect fully a right which the patent gives him, namely, to prevent others using the patented article without his consent, and compel an infringer to relinquish the profits which he has realized and which, in equity, belong to the patentee."

We think these cases are quite persuasive on the proposition that the satisfaction of judgment for the profits of a manufacturer will not free the article in the hands of the user and jobber from all claims of the patentee. The fact that there was a recovery against the manufacturer for profits in making the article complained of as an infringement does not prevent the patentee from proceeding against the manufacturer's vendee for an accounting, if he had made profit, or for damages, or for an injunction.

[2] The second proposition, and the one relied on by defendant-appellant, is more serious. In determining it, it is well to understand just what the Brennan judgment covered. Defendant-appellant was a jobber of farm implements, and from January 26, 1899, to November 30, 1902, sold grain drills that infringed the Hoyt patent. These

drills had been manufactured by Brennan & Co. Southwestern Agricultural Works of Louisville, Ky., under a contract with defendant-appellant. Suit was brought by plaintiff-appellant against Brennan & Co., claiming both profits and damages. The case is reported in Dowagiac Manufacturing Co. v. Brennan & Co., 162 Fed. 472, at page 479, 89 C. C. A. 392, at page 399, where the court says:

"There is some evidence in the record which bears upon the subject of damages; but as we infer, from the discussion in the appellant's brief, the claim for damages, as distinct from profits, is not intended to be urged, we do not consider that subject."

The American Seeding Machine Company, assignee of Brennan & Co., brought action to stop the accounting in this case. It is reported as American Seeding Machine Co. et. al. v. Dowagiac Manufacturing Co., 241 Fed. 875, 878, 154 C. C. A. 577, 580, and the court said:

"In the Michigan case the Dowagiac Company recovered no damages of any kind against the Brennan Company; the Deere & Webber Company's profits on the sale of the drills in question were not taken into account; the Deere & Webber Company is alleged to have made a profit at least, if not to be liable for damages on account of their sales of the drills in question. In this situation plaintiffs' right to the relief asked is at least not indisputable."

It is apparent, therefore, that in the Brennan Case there was a recovery only for profits, and those profits were measured by the difference in the cost of making and the sale price to the defendant-appellant. It should be stated that the recovery from Brennan & Co. was the profit due to the manufacture and sale by said company of 9,406 infringing grain drills. The master herein has reported the profits on 5,171 grain drills, the same being part of the number of drills for which recovery was had in the Brennan Case.

It would have been helpful to have had before us a copy of one of the contracts made between defendant-appellant and Brennan & Co. We have the testimony of Mr. Webber that his company made written contracts each year prior to the selling season with Brennan & Co., and that Brennan & Co. undertook to make and his company undertook to sell Brennan & Co.'s drills. This fact also appears in the statement of evidence on page 40 of the defendant-appellant's transcript.

Under these circumstances, were Brennan & Co. and Deere & Webber Company joint tort-feasors, and, if so, does the recovery of profits by plaintiff-appellant against Brennan & Co. release Deere & Webber Company both from an accounting as to profits and for damages. It seems to be conceded in the brief of plaintiff-appellant that they were joint infringers. On page 52 occurs this statement:

"We call attention to the fact that the defendant herein is, it might be said, a joint infringer, at least a coinfringer, with the defendant in the Brennan Case."

The Supreme Court in Dowagiac Manufacturing Co. v. Minnesota Moline Plow Co., 235 U. S. 641, 648, 35 Sup. Ct. 221, 224 (59 L. Ed. 398) speaks of the taking of the exclusive right to the patent as a "tortious taking." Its language is as follows:

"As the exclusive right conferred by the patent was property, and the infringement was a tortious taking of a part of that property, the normal measure of damages was the value of what was taken."

Infringers of patents are tort-feasors. We think Deere & Webber Company and Brennan & Co. were joint infringers of the Hoyt patent by virtue of the contract made between them, and occupy, technically, at least, the position of joint tort-feasors. Perhaps they could more aptly be termed coinfringers. In Clay v. Waters, 161 Fed. 815, 819, 88 C. C. A. 633, 637, on the question of joint tort-feasors, the court says:

"The accepted rule on this subject is that, 'when several persons unite in an act which constitutes a wrong to another, intending at the time to commit it, or doing it under circumstances which fairly charge them with intending the consequences which follow,' they are all jointly liable for the wrong done, without regard to their individual participation in its accomplishment or their individual gain or profit resulting therefrom. They are joint tort-feasors, and as such jointly and severally liable for the consequences of their wrongful act."

[3] The rule as to joint tort-feasors is elementary that, where there has been a complete recovery against one joint tort-feasor and satisfaction of the same, there cannot be recovery for the same thing against the others. The doctrine is based on the theory that plaintiff is entitled to but one satisfaction for his injury. It is well established in the United States Courts that, to operate as a release of one joint tort-feasor, a judgment against another tort-feasor must be satisfied. There can be as many judgments as there are tort-feasors, but there can be only one satisfaction. The prevailing doctrine is well established that separate suits may be brought against joint wrongdoers. One suit is not a bar to the other, until there is satisfaction of judgment. The joint infringers here were not partners. They were not acting in concert as to profits, nor were they agents one of another, further than Deere & Webber Company acted as jobbing agents for the sale of the drills in certain territory. The profit to each was the result of separate action. The profits of Brennan & Co. were made by the sale to Deere & Webber Company, joint infringers. The Deere & Webber Company profits were not in existence at the time the Brennan & Co. profits accrued, and were made by sales to the public. The recovery against Brennan & Co. for profits was not for any joint action, and there was no recovery whatever for damages. Deere & Webber Company had no claim on the Brennan & Co. profits, and we do not think there could have been any accounting in that case against Deere & Webber Company for profits accruing solely to Brennan & Co., even if they were joint infringers.

It seems to us that defendant-appellant and Brennan & Co. are about in the same position as to being joint tort-feasors as the parties in Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000. The court there laid down the rule that, unless all the defendants realize a profit from infringement, a joint decree for the payment of said profits should not be entered against them. In that case the city of Elizabeth made no profits at all. It was said by the court that it made itself liable to damages in using the patented article. There was a contract providing for pavement being made on the one hand and an agreement to make it on the other. The contractor alone realized the profit. It was held that the city of Elizabeth and George W. Tubbs, one of the parties,

were not liable for profits. The theory of this case and others is that there cannot be an accounting for profits from one who has made no profits. The parties there would be joint infringers under their contract in the same sense that the Brennan & Co. and Deere & Webber Company were joint infringers. In the syllabus of this case appears the following:

"Where contractors laid a pavement for a city, which infringed the patent of Nicholson, and the city paid them as much therefor as it would have had to pay him had he done the work, thus realizing no profits from the infringement, held, that in a suit in equity, to recover profits, against the city and the contractors, the latter alone are responsible, although the former might have been enjoined before the completion of the work, and perhaps would have been liable in an action for damages."

If plaintiff-appellant in the suit against Brennan & Co. had recovered judgment for damages for infringement, it would have been quite different from a recovery of judgment for profits, and the judgment for damages and satisfaction thereof would have precluded recovery for damages in this case. This would not apply, of course, to the recovery merely of nominal damages.

[4] The owner of the patent is entitled to an accounting for profits as well as to a recovery of damages. Profits represent what the wrongdoer has made in wrongfully dealing in other people's property. There is no right in equity for him to keep them. To take the profits from him is merely taking what he amassed in the wrongful business of infringing on others' rights, and tends to make such business unpopular. On the other hand, damages are for the injury which has been caused to the complainant. The two are separate and distinct, and may constitute separate causes of action. The distinction is pointed out and made clear in the following cases:

In Underwood Typewriter Co. v. E. C. Stearns & Co., 227 Fed. 74, 82, 141 C. C. A. 622, 630, the court said:

"On an accounting for infringement of a patent, defendant's profits and complainant's damages are distinct from and independent of each other. They are governed by different principles, and the allowance of one does not preclude recovery of the other."

See, also, Beach v. Hatch (C. C.) 153 Fed. 763.

Under the federal statutes (Revised Statutes, § 4921 [Comp. St. § 9467]) the decree may provide for the recovery of damages as well as for an accounting for profits. Said section is as follows:

"Upon a decree being rendered in any such case for an infringement, the complainant shall be entitled to recover, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby; and the court shall assess the same or cause the same to be assessed under its direction. And the court shall have the same power to increase such damages, in its discretion, as is given to increase the damages found by verdicts in actions in the nature of actions of trespass upon the case."

That there is a difference in damages and profits is thus established by federal statute, which recognizes the right to a recovery both of damages, sometimes threefold, and also profits.

There is no reason, however, why a party might not sue one joint infringer for an accounting of the profits he had made, and sue an-

other joint infringer for damages. Complainant is entitled, of course, to only one recovery for damages, and such recovery against one joint tort-feasor and satisfaction thereof releases the other. The accounting for and payment over of profits, however, may not in any way equal the amount of damages. In other words, the damages may far exceed the profits. Likewise, the accounting for profits is on an entirely different theory from the recovery for damages, namely: That an infringer, even though a tort-feasor and liable in damages, may also be charged as a trustee de son tort, and be liable as such to account for gains and profits. In the Brennan Case, 162 Fed. 472, 89 C. C. A. 392, the court said:

"In a proceeding against an infringer for profits, the defendant may not inaptly be regarded as a trustee de son tort."

This was expressed by the trial court as follows (page 11, transcript of record, Deere & Webber):

"To say that an infringer of a patent is a tort-feasor, and to stop there, is to state only part of the true situation. An infringer is a tort-feasor, and liable in damages; he may also occupy the position of a trustee de son tort, and be liable for gains and profits. In both capacities he is subject to injunction."

On the general subject of joint tort-feasors and their release the following cases are instructive:

In Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000, hereinbefore referred to, the court, speaking of profits, said:

"The subject, as a whole, is surrounded with many difficulties, which the courts have not yet succeeded in overcoming. * * * It is also clear that a patentee is entitled to recover the profits that have been actually realized from the use of his invention."

In De Laski & Thropp C. W. T. Co. v. Empire R. & T. Co. (D. C.) 239 Fed. 139, 142, 144, 146, the court said:

"The plaintiff is not precluded from recovering of this defendant the profits to which it would otherwise be entitled, simply because the defendant, in its use of the infringing machine, was a joint tort-feasor with the Thropp Company. * * * I must conclude, therefore, that even if the plaintiff has received full compensation from the Thropp Company for the damages which it sustained as a result of the latter's infringement, to the same extent as if it, rather than the Thropp Company, had manufactured and supplied the defendant with the machines which it has used, that this fact will not bar the plaintiff from some relief in this action. The remaining questions are as to the extent and nature of the relief. * * * Plaintiff is undoubtedly entitled to recover whatever profits the defendant realized from the use of the infringing machines, if it elects so to do, irrespective of the recovery of damages from the Thropp Company."

In Sherman Clay Co. v. Searchlight Horn Co., 225 Fed. 497, 500, 140 C. C. A. 539, 562, the court says:

"All dealers in such articles without license from the patentee are alike tort-feasors, and all are alike amenable to damages until the patentee is compensated for the damages sustained, and all may alike be enjoined from so dealing in such articles. There may be as many causes of action as there are joint tort-feasors, and as many recoveries, but there can be only one satisfaction."

In Covert v. Sargent (C. C.) 38 Fed. 237, the court held that where one of the defendants received $750 and the other defendant received $250 from the Connecticut corporation, which it seems represented their respective interests as members of that corporation in the profits made by the corporation through its infringement, that the decree should charge each defendant with the profits which he severally derived instead of charging both jointly for the full amount. Walker on Patents (5th Ed.) § 712, lays down the doctrine as follows:

"Where several defendants were joint infringers of a patent, but where all the resulting profits were received by part of the wrongdoers, then the decree for profits will be rendered only against those defendants who realized them."

Belford v. Scribner, 144 U. S. 488, 507, 12 Sup. Ct. 734, 740 (36 L. Ed. 514) is much relied on by defendant-appellant. The facts are so different from the case at bar that we think it can be in no way controlling. The court there said:

"It is to be inferred that Donohue & Henneberry made a profit from printing the piratical books. They were, therefore, sharers in the profits realized from the sale of the books, and were participes criminis with the defendant corporation in the infringement; that the two sets of defendants together printed and published the books, and were practically partners in doing it."

There the opinion is based on the thought that the parties were practically partners and were sharers in the proceeds, but here Deere & Webber Company did not share in the profits of Brennan & Co., a joint infringer.

In Blackman v. Simpson, 120 Mich. 379, 79 N. W. 573, 58 L. R. A. 410, referred to in defendant-appellant's brief, different parties were sued for false imprisonment. A separate action was brought against the sheriff, which action, however, covered the same time of imprisonment, with some additional time. The court said the plaintiff might have recovery of his damages in the first suit, and "we have no means of knowing that he did not have." It is quite different here, as we do know there was no recovery for damages in the first suit, and only recovery for profits made by one infringer.

Plaintiff-appellant was entitled to be made whole for the injury suffered by the infringement of the Hoyt patent. There never has been a recovery and satisfaction for complainant's injuries with respect to the particular grain drills in question. The judgment in the Brennan Case represented no damage caused by Brennan & Co. or by Deere & Webber Company for the infringement of the patent. It represented no profits made by Deere & Webber Company, for their profits had not accrued at the time of the Brennan & Co. profits. How, in justice, can it now be claimed that under these circumstances the judgment against Brennan & Co. solely for profits made by them, and with which Deere & Webber Company had nothing to do, releases Deere & Webber Company from an accounting for the profits made by them or the damages caused by them? Complainant has received no full compensation from one of the wrongdoers.

The theory on which defendant-appellant seeks to escape responsibility is simply this: Where there are joint infringers of a patent and one infringer, the manufacturer, by his own separate and distinct

wrongful act has made profits, no part of which go to the other joint infringer, if the patentee seeks to compel the coinfringer to account for the profits he has wrongfully made by a sale of the same property which he has bought from his coinfringer, his acts being separate and distinct from those of his coinfringer, and his coinfringer having no part therein, he may say:

"I am released from accounting for the profits secured by my wrongful act with which my coinfringer has had nothing to do, because my coinfringer has been compelled to account for his profit secured by his wrongful act separate and distinct from mine."

Such doctrine would be conducive to sales from one infringer to a coinfringer for a small profit, and if such profit were recovered or satisfied in any way a wide door of release to the joint infringer would be opened. We do not believe the doctrine of releasing a joint tortfeasor should be stretched to cover such a situation.

Under the circumstances of this case the profits of the manufacturer, Brennan & Co., being a separate and distinct matter from the profits of the sales of defendant-appellant, it was rightfully called to an accounting for profits wrongfully made in the manufacture and sale of drills infringing the Hoyt patent, and Deere & Webber Company likewise can be called to an accounting for the separate profits made by it in selling the same grain drills in so far as profits were the result of infringing the Hoyt patent. The recovery from Brennan & Co. of their profits is no bar to an accounting for profits made by Deere & Webber Company in dealing with the same property separate and distinct from Brennan & Co. While these parties were, as stated, technically joint tort-feasors, their relation to each other was somewhat different from the ordinary situation of joint tort-feasors. It was a situation of joint tort-feasors, performing separate and distinct acts independent of one another, resulting in separate and distinct profits to each. There being no recovery for damages for infringement in the Brennan & Co. Case, there is no legal bar to recovery of damages against Deere & Webber Co.

## II. Profits.

[5] The Hoyt patent has been the subject of much litigation in the courts. If imitation is flattery, the owners of the Hoyt patent have reason to feel they have been very highly flattered; but apparently they do not regard this as sufficient compensation for the loss of profits on their invention or damages suffered. This patent was first sustained by the Court of Appeals for the Sixth Circuit in McSherry v. Dowagiac Manufacturing Co., 101 Fed. 716, 41 C. C. A. 627; the three judges passing on the same being Judges Taft, Lurton, and Day, all subsequently members of the Supreme Court of the United States. Since that time the matter has pursued its devious way, there being some 17 cases with reference to the patent decided in the federal courts outside of the Supreme Court, and 6 cases there which relate to it. It has been in this court a number of times. Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., 118 Fed. 136, 55 C. C. A. 86; Dowagiac Mfg. Co. v. Fowler et al., 121 Fed. 988, 58 C. C. A. 643; Dowagiac Mfg. Co. v.

Minnesota Moline Plow Co., 183 Fed. 314, 105 C. C. A. 526. It is the all too frequent story of a man in whose brain was born a new and useful idea fighting a long, weary battle against those who seek to appropriate the fruits of others' brain or toil. We see nothing to be gained in a discussion of these numerous cases. Reference may be made to a few of them. Some of the decisions are conflicting, but substantially all recognize the merit of the Hoyt invention.

In Dowagiac Manufacturing Co. v. Minnesota Moline Plow Co., 183 Fed. 314, 105 C. C. A. 526, this court held that recovery should be limited to nominal damages. In Dowagiac v. Brennan & Co. Southwestern Agricultural Works, 162 Fed. 472, 89 C. C. A. 392, the Court of Appeals for the Sixth Circuit held that the Dowagiac Manufacturing Company was entitled to all the profits made on the infringing machines. These two cases illustrate the wide divergence of opinion between these two courts with relation to the Hoyt patent. In the case in this circuit (183 Fed. 314, 315, 105 C. C. A. 526, 527) Circuit Judge Adams delivered the opinion of the court and said:

"The patent assumes the existence of practically all the elements of well-known grain drills then in existence except the means for exerting an effective pressure upon the shoes in order to elevate or depress them as occasion required. The claims provide for a certain spring metal pressure rod to accomplish this purpose. The interposition of this rod, in combination with old elements, constituted the invention of the patent. * * * In other words, the contention is that, because the Hoyt patent is a combination patent in which one novel feature is combined with several not novel, each and all of the elements, associated in that combination, are, for the purposes of an accounting, to be considered as appropriated by the patentee, and, if there is an infringement of the novel feature, all the profits made by the infringer upon the whole combined structure are recoverable, and that proof of those made by reason of the novel feature alone is unnecessary."

In the case in the Sixth circuit, Dowagiac v. Brennan & Co., 162 Fed. 472, 89 C. C. A. 392, it is recited in the syllabus:

"The Hoyt patent, No. 446,230, for a grain drill, is not for an addition to an otherwise complete machine, but is for a combination of elements, some of which are old, to accomplish an improved result, in which each element, whether new or old, is an essential part of the invention, and the liability of an infringer who has appropriated the combination as a whole is not limited to the profit made on any particular element, but extends to the profit made on the entire machine. * * * "

The court said (162 Fed. at pages 474, 475, 89 C. C. A. 394, 395):

"The fundamental proposition on which the report in respect to the profits rests is that the whole of Hoyt's invention and patent resides in the spring pressure device and does not extend to other parts of the drill. * * * This is a specious argument; but it is not in accord with the established principles of law regarding patents on claims for combinations of several elements, and, when applied to this case, results in a radical error. The claims of the patent in suit are not restricted to single things, but some of them—the first, for instance—include the several elements which go to make up the seeding part of a drill, in combination. It covers them all as one whole. Every one is made material by including it in the combination. The spring devices are not thereby patented. For the purposes of the claim and the patent thereon, they are on the same footing with all the other parts of the drill, however old and common they may be. Any one might make and sell each and every part, or any lesser or larger combination of such parts, including the spring device, without infringing the patent, provided, of course,

they are not intended to contribute to the making up of the entire combination covered by the patent. But one part in a combination is no more patented than another. All in association are patented."

The court further said (162 Fed. at page 475, 89 C. C. A. 395):

"In the cases of Elizabeth v. Paving Company, 97 U. S. 126, 24 L. Ed. 1000, and Hurlbut v. Schillinger, 130 U. S. 456, 9 Sup. Ct. 584, 32 L. Ed. 1011, no doubt the material employed, the blocks, the sand, the gravel, the cement, could have been put down in the usual way in some other fashion, and have been of some value as a pavement, but not to the extent of excellence that one laid according to the patent would have been. Indeed, the records in both those cases show that former patents had taught how this might be done."

The court concludes:

"We therefore think that the plaintiff was entitled to recover the profits made on the infringing machines."

On account of the different conclusions reached especially in these two cases and others growing out of the patent, and because of the importance of the questions involved, the Supreme Court of the United States granted writs of certiorari under which the questions were taken to that court for determination, and they were finally determined in Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., 235 U. S. 641, 35 Sup. Ct. 221, 59 L. Ed. 398. In view of the claim so earnestly argued that the Hoyt patent was a combination patent with no new elements or features, it might be suggested that the Supreme Court in its decision (235 U. S. 641, 650, 35 Sup. Ct. 221, 225, (59 L. Ed. 398) said:

"Ordinarily what has been said would lead to an affirmance of the decrees below."

That would be an affirmance of the finding of this court in 183 Fed. 314, in which the court had said that the Hoyt patent was a combination patent in which there was one novel feature in combination with several others. We think, however, that the Supreme Court in this decision itself settled what the Hoyt patent was, and that so far as this case is concerned it laid down a number of propositions under which a proper accounting can take place. That decision, together with the decision of the Supreme Court in Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, gave a new starting point in the law with reference to this patent. In Seeger Refrigerator Co. v. American Car & Foundry Co., 219 Fed. 565, 567, 135 C. C. A. 333, 335, the court said:

"The recent decision of the Supreme Court in Westinghouse Co. v. Wagner Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, was evidently intended to furnish a new starting point in the developed law on the subject before us, and we need not consider any other of the numerous cases that have been cited"

As to the Dowagiac Case the court said:

"We may note also that the Supreme Court has recently (January 11, 1915) decided the case of Dowagiac, etc., Co. v. Minnesota, etc., Co., 235 U. S. 641, 35 Sup. Ct. 221, 59 L. Ed. ——, in which the subject of accounting for profits is again considered."

We have the advantage therefore in arriving at our conclusion of a decision of the Supreme Court of the United States on this very patent, and the enunciation of principles there with reference to accounting for profits and recovery of damages which, of course, is binding upon this court. It is a new starting point. The difficulty is not in understanding these principles as enunciated by the Supreme Court, but in applying them to the facts. It makes no difference what the view of this court may be as to whether the Hoyt patent was a new combination of old elements entirely with no new features as decided in the Brennan and other cases in the Sixth circuit, or whether it was a combination of old elements with a single novel element added as suggested in the case in this circuit (183 Fed. 314, 105 C. C. A. 526), for the trail through the maze of difficulties surrounding this patent and its construction has been blazed by the Supreme Court. It is for us to follow that trail. We shall endeavor to do so. In Dowagiac Mfg. Co. v. Minn. Moline Plow Co., 235 U. S. 641, 644, 645, 646, 35 Sup. Ct. 221, 223 (59 L. Ed. 398), the court said:

"It is quite plain, as we think, that the patent was not for a new and operative grain drill, but only for particular improvements in a type of grain drill then in use and well-known. The invention was so described in the specification forming part of the patent. * * * In keeping with this statement the claims in the patent were limited to a suitable construction and arrangement of spring pressure rods in combination with certain correlated elements of the seeding part of a grain drill—the part which opens the furrows, guides the seed into them and then closes them. Of course, this was an important part, but it was only that; for other parts were required to complete the machine and make it operative. * * * Only when all the parts were present and so adjusted as to perform their respective functions was the drill a practical and successful machine. In this respect no change resulted from the invention covered by the patent. It effected material improvements in one part, but did not obviate or diminish the necessity for the others. We think the evidence, although showing that the invention was meritorious and materially contributed to the value of the infringing drills as marketable machines, made it clear that their value was not entirely attributable to the invention, but was due in a substantial degree to the unpatented parts or features."

From these statements certain propositions applicable to this case may be considered as settled, viz.: That the Hoyt patent was for particular improvements in type of grain drill then in use and well known; that the claims of the patent were limited to construction and arrangement of spring pressure rods in combination with certain correlated elements of that part of the seeding portion of the drill which "opens the furrows, guides the seed into them, and then closes them"; that other parts, some simple and others complex, were necessary to complete and make operative the drill, and as to these parts, no change resulted from the invention of Hoyt; that the Hoyt patent improved the seeding part of the drill, but did not render less useful or diminish the necessity for the other parts of the drill; that the value of the drills, as marketable machines, was not entirely attributable to the invention, "but was due in a substantial degree to the unpatented parts or features"; that the burden was on plaintiff-appellant to introduce evidence from which apportionment of profits could be made; that plaintiff-appellant was entitled to recover, not only its proportion of profits,

but also damages; that the damages were covered by a reasonable royalty and that reasonable royalty could be shown by experts in the absence of any fixed royalty.

In Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 615, 32 Sup. Ct. 694 (56 L. Ed. 1222, 41 L. R. A. [N. S.] 653), referring to apportionment of profits it is said:

"In such case, if plaintiff's patent only created a part of the profits, he is only entitled to recover that part of the net gains."

In Coffield Motor Washer Co. v. Wayne Mfg. Co. et al., 255 Fed. 558, 166 C. C. A. 626, it is set forth in the syllabus as follows:

"Where defendant sold an infringing washing motor, and the ordinary sales unit consisted of the tug, fixtures, and infringing motor, held, that the profits from the sale of fixtures could be recovered only in so far as the fixtures were useful solely in connection with the style of motor infringed, and complainant could not recover profits on that part of the fixtures which could be used in connection with other styles of motors."

The evidence on the separation of profits between the patented and unpatented features must not be merely speculative, but must have some basis of reliability. Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371. It is, of course, impossible to arrive at such separation of profits by mathematical exactness.

We think, under the decision of the Supreme Court, referred to, in the apportionment of profits here there should be a separation as far as possible between the profits arising from that part of the seeding portion of the machine which "opens the furrows, guides the seed into them, and then closes them," and the parts peculiarly correlated therewith, in distinction from the draft portion. The patent does not merely cover the spring, but relates to the seeding part of each machine as affected by the spring. Some portions of the seeding part may not be included in the patent, but the general line of demarcation between the seeding part and the drafting part, we think, must be followed in the apportionment of profits. This interpretation seems to have been accepted by appellant's counsel. At page 37 of their brief they say:

"We observe, however, that the Supreme Court has now directed an apportionment between the seeding part of the machine and the feed and draft part of the machine, which has been done in the instant cause."

With this as a basis we proceed to try and reach a conclusion as to what part of the profit is attributable to the patented features of the drill and what to the unpatented features. We realize that due weight must be given to the findings of the master, especially on a controverted question of fact or the credibility of witnesses. Certainly the master's report is not binding when certain legal principles have not been followed, or have been misapplied, or when the findings of the master do not work out substantial justice between the parties. In such case we see no reason why the court should not review the entire matter. Indeed, it is its duty so to do.

The contention of plaintiff-appellant is that the Hoyt patent is a combination patent, and that practically all the elements of the drill must be associated in the combination, and, being so associated and correlated, are appropriated by the patentee, and that by virtue of the

infringement he or his assignee is entitled to all the profits made by the infringer. This contention was made in Dowagiac Manufacturing Co. v. Minnesota Moline Plow Co., in this court in 183 Fed. 314, at page 317, 105 C. C. A. 526, at page 529, and cases cited in support of it, and this court said:

"Without now analyzing these cases, it serves our present purpose to say that if they support the contention of the complainant they seem out of harmony with the doctrine of the Supreme Court and our court as disclosed in many cases."

Substantially the same contention is urged here.

Witness Hoyt figures and assumes to find a proper ratio under the Supreme Court decision, which would give to the patentee nearly all the profits from the sale of the drills. By one method of figuring he claims 96⅓ per cent. of the entire profits on the drill should go to the patentee or its assignee. By another method entirely, figuring in proportion to the cost of production, he estimates 74⅓ per cent. of the entire profits for the patentee. This is in sharp contrast to the report of the master, allowing 25 per cent. Hoyt in his testimony divides the machine into eight parts, namely, the grain box, frame and axle, furrow openers, operating levers, wheels, poles, hitch beam, and neck yoke and eveners, and of these eight parts claims that five are covered by the patent and three are not. Mr. Johnson, a witness for defendant-appellant, separates the machine into five parts, viz. the hopper or seed box, the frame, the wheels, the hitch, and furrow openers. Mr. Hoyt's testimony, we think, is not in accord with the language of the Supreme Court that the value of the drill was due in substantial degree to the unpatented parts. It could hardly be claimed that the 3⅔ per cent. that Hoyt leaves for the unpatented parts would be a substantial part of the machine.

We think Mr. Hoyt's claims in the evidence are somewhat inflated, and that he has included as coming under the patent parts of the machine that should not be so classified. We do not think the mere fact that such parts may be stated in his claims for a patent are at all controlling in an accounting suit for profits. He is, of course, deeply interested and naturally aggrieved that he has been compelled to spend so many years in litigation, and such large sums of money to protect a right his government had given him. Naturally his testimony would be somewhat biased in favor of the largest possible measure of profits to the patentee or the owner of the patent. Because it is necessary to have wheels on a grain drill in order to make it operative is no reason why the profits on the wheels in the sale of a machine should belong to the patentee. He had invented something to improve another part of the drill. It, of course, improved the entire drill. Likewise the grain box, the neck yokes, and certain of the associated parts. They are necessary, of course, to the drill, and are used in conjunction with the patented portions; but they are in no wise covered thereby.

As we have before said, the patented features relate to that part of the seeding portion of the drill "which opens the furrows, guides the seed into them, and then closes them." It is admitted by counsel for defendant-appellant that these features include the complete furrow opener. On the other hand, fairly included within the unpatented

parts of the drill should be the grain box, carrying wheels, frame and axle, poles, neck yokes, and associated parts. These parts are necessary in the infringing machine, but are likewise used and necessary for noninfringing machines, and the doctrine expressed in Coffield v. Wayne, 255 Fed. 558, 166 C. C. A. 626, would apply.

Evidence of defendant-appellant's witnesses is to the effect that one-fifth to one-third of the entire profits of the machine should be apportioned to the seeding part thereof. So we have the wide range of evidence as to the apportionment of profits between patented and unpatented features varying from 20 per cent. to 96⅓ per cent. We refer to some of the testimony:

Witness Jones says (page 28 of transcript of record):

"As to what proportion of the total selling price of these shoe drills was represented by the selling price of the furrow openers, why, the furrow openers represented, generally speaking, about one-third of the selling price, if I am not mistaken."

Witness Shutz (page 44, transcript of the record):

"I would guess that an average of about one-third of the selling price of the complete drill is indicated by the price of the furrow openers, considering both classes of furrow openers that I have mentioned. That would be about true for the $1.25 and for the $1.75 both. I have averaged it, if you combine the figures. As to the combination recited in claim 1 of the patent in suit, that specifies: (1) transport wheels; (2) frame; (3) hopper; (4) shoe; (5) draft rods; (6) clamping plates (that is, corresponding to the cam plate that you have identified in the furrow opener); (7) spring metal pressure rods; (8) forked arm coupled to the said rods (corresponding to what you denominated the stirrup, I think); (9) means of raising and lowering said arm (being the raising and lowering rock shaft and its connections). I cannot tell what part of the selling price of the entire drill would be indicated by the price of these enumerated parts."

Witness Johnson (page 71, transcript of record):

"A frame in the seeding device of a broadcast seeder is similar to that of a grain drill. Some manufacturers use precisely the same patterns and parts for the seeder of both machines, that is, for the seed feed. * * *

"XQ. 88. Would not a profit in a broadcast seeder be the profit on an unpatented machine, as distinguished from a patented machine? A. I could only say that profit on many unpatented articles is frequently as great as patented articles. All depends on the circumstances."

Witness Bean (page 80, transcript of record):

"From my experience I would say the relative cost of the shoe furrow opener complete, is about 20 per cent. of the entire drill. A disk furrow opener would run a little high. As to the relative cost of the pressure device to the complete furrow opener, I do not know that I could give an offhand opinion on that for I do not know. I should think that the pressure would not be a very large per cent. of the costs. * * * *"

Witness Clausen (page 85, transcript of record):

"The value to be attributed to the spring pressure in the sale of a complete grain drill is not to exceed one-third. It composes a part of the furrow opener, which, in the trade, is considered, the factory experience shows, comprises one-third of the grain drill."

As to price on repairs not being a fair guage by which to judge value of parts, witnesses testified as follows:

Witness Johnson (page 68, transcript of record):

"Repair prices are made for the purpose of making them high enough to allow for discounts from a list and the repair prices, of course, are very much higher than for the same parts of the machine as a whole. They frequently run as much as five times the price of the drills; that is, a price of the drill, based on the repair parts of all the parts, would be about five times the regular selling price of the drill."

Witness Bean (page 80, transcript of record):

"If we were to take a grain drill, and separate all of the parts belonging to it, and compute the value of it from the repair list, your result would be a very much higher price than what is known as the dealer's price."

We feel the master has not given sufficient weight to the testimony as to the utility of the Hoyt patent and the great assistance it has been to the farmers of the country. There is testimony that it resulted in a saving to farmers in their seeding of from one peck to one-half bushel of seed to the acre.

Witness Adams says (page 36, transcript of record):

"I have seen Superior disc drills, single and double. I don't know how successfully they were used, but in my opinion as a farmer there is no disc, or drill with spiral springs, ever put on the market that would equal the Dowagiac bar spring. That was the big point in the utility of the disc drill."

While the claims of the patent were limited to the combination of the spring pressure rods with certain correlated elements of the seeding part of the drill, "the part which opens the furrows, guides the seed into them, and then closes them," as stated by the Supreme Court, and while "the value of the infringing drills was not entirely attributable to the invention, but was due in a substantial degree to the unpatented parts or features," yet we believe that the apportionment of profits awarded by the master to plaintiff-appellant and sustained by the trial court was not sufficient under the evidence and the rules laid down by the Supreme Court. Fixing the ratio of value of the patented part to the entire machine, and estimating as best we may from the evidence what such patented part has proportionately contributed to the profits, and taking from the infringer the part of the profits to which he is not entitled, we believe as fair and just an apportionment as could be arrived at would be 40 per cent. of the profits to the patented parts and 60 per cent. of the profits to the unpatented parts. We realize there is no mathematical exactness in this conclusion. It is not merely an arbitrary finding, however, but has support in the evidence, and is fair to both parties. As the undisputed profit on the sales was $47,667.83, plaintiff-appellant should have been allowed by the master at least 40 per cent. thereof, amounting to $19,067.13.

### III.

[6] Plaintiff-appellant is entitled, not only to profits, but to damages based upon a reasonable royalty; there being no fixed royalty. The master found that $3 per drill was a reasonable royalty for the use of the Hoyt patent. He made a deduction from that of $2 per drill because of the Brennan judgment. The report of the master was in the alternative form, and the court, believing the master's findings as to profits, did complete justice between the parties, and, believing that to

adopt the reasonable royalty theory would open the door to great uncertainty, adopted the report in its findings as to profits, as we have heretofore pointed out. Under the language of the Supreme Court in Dowagiac Mfg. Co. v. Minn. Plow Co., 235 U. S. 641, 35 Sup. Ct. 221, 59 L. Ed. 398, it is apparent that the court determined that both profits and damages in that case could be recovered. The language (235 U. S. at page 650, 35 Sup. Ct. 225, 59 L. Ed. 398) was as follows:

"The infringing sales covered 2,500 or more drills, the profits were substantial, and the damages, if rightly measured, were evidently more than nominal."

In Beach v. Hatch (C. C.) 153 Fed. 763, 764, 765, the court says:

"Under section 4921 and the decree entered in this case, the master should have proceeded, first, to ascertain defendant's profits; and, second, complainant's damages. The complainant could then elect to have a decree entered for either profits or damages"—citing Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664. "But the master went further, and ruled that these profits were not only the measure of complainant's damages, but of defendant's profits. In so ruling I think the master lost sight of the fundamental distinction between defendant's profits and complainant's damages. The former are 'the profits, gains, savings, and advantages' which have accrued to the defendant by the use of the infringing machines, and which are recoverable on the principle that equity will not permit a wrongdoer to profit by his own wrong, while the latter are the actual damages sustained by the complainant, which are recoverable on the principle of compensation for the loss he has suffered by the wrongful act of the defendant. It is clear, therefore, that defendant's profits and complainant's damages are distinct from and independent of each other, that they are governed by different principles, and that one cannot be said to be the measure of the other in an accounting under section 4921."

In Underwood Typewriter Co. v. E. C. Stearns & Co., 227 Fed. 74, 82, 141 C. C. A. 622, 630, it is said:

"On an accounting for infringement of a patent, defendant's profits and complainant's damages are distinct from and independent of each other. They are govered by different principles, and the allowance of one does not preclude recovery of the other. Beach v. Hatch (C. C.) 153 Fed. 763. And it does not follow that no damages are recoverable because no profits were realized."

In Westinghouse Electric & Mfg. Co. v. Wagner Electric & Mfg. Co., 225 U. S. 604, 615, 32 Sup. Ct. 691, 694 (56 L. Ed. 1222) the court says:

"In considering the question presented by the record here, it is to be borne in mind that Congress has legislated (Rev. Stat. § 4921) with a view of affording the patentee ample redress against the infringer. It not only makes the latter liable for damages—sometimes threefold damages—but for all profits derived from the use or sale of plaintiff's invention."

The provisions of the federal act quoted elsewhere give the power to increase damages, and, as said in Tilghman v. Proctor, 125 U. S. 136, 148, 8 Sup. Ct. 894, 901 (31 L. Ed. 664):

"And thus expressly affirms the defendant's liability to account for profits, as well as authorizes the court sitting in equity to award and to treble any damages that the plaintiff has sustained in excess of the defendant's profits."

That expresses the real gist of the situation here, namely, there are damages in excess of the profits. In other words, there is no showing that profits in any way cover the damages. Hence there may be re-

covery for both. The profit generally, as we have heretofore pointed out, is what the wrongdoer has made. The damage is what the patentee has been deprived of. The wrongdoer is not allowed to keep the profits he has made by selling an article which is an infringement of another's patent. We have discussed this rather fully in another part of this opinion, and so merely refer to it here. We see no reason in this case why plaintiff-appellant is not entitled both to a share of the profits and also to the damages sustained. The original decree in the case entered by Judge Amidon February 13, 1906 (found on page 2, Deere & Webber transcript of record), provided that:

"The plaintiff shall recover from said defendant as well the damages sustained by the said infringement as the profits, gains and savings, made or realized thereby, and that the said defendant shall account to the complainant for all such profits and damages."

We consider the reasonable royalty as found by the master, namely, $3 per drill, to be entirely justified by the evidence. He deducted from this allowance of $3, $2 per drill, because of the judgment and recovery in the Brennan Case. We think there is no justification for this, for the reasons we have heretofore expressed in discussing the Brennan & Co. judgment. The recovery in the Brennan Case was for profits distinct and separate from the profits of Deere & Webber Company and profits made prior thereto. The Brennan judgment, in our opinion, is not involved in this matter, and the amount of the Brennan judgment should not have been deducted from any finding as to royalty. The evidence, however, in the record as to reasonable royalty, there having been no fixed royalty, is entirely as to a royalty covering the manufacture, sale, and use of the patented article. In Philadelphia Trust & Ins. Co. v. Edison Electric Light Co., 65 Fed. 551, 554, 13 C. C. A. 40, 43, the court said:

"It has been often repeated that a patentee has three distinctive rights— the right to make, the right to sell, and the right to use his patented articles —and that whoever invades any one of these rights is an infringer, and liable for damages."

The term "royalty" is used generally to cover the manufacture, sale, and use. It would not be fair or just, however, in equity to charge against defendant-appellant the entire royalty, where it did not manufacture, but only sold, the infringing articles, even on the theory of joint infringers. We believe a fair division of this royalty would be to charge against defendant-appellant one-third of the $3 per drill. While this method of reasoning reaches approximately the same result as is reached by deduction of the Brennan judgment, we believe this route a better and surer one. Plaintiff-appellant should therefore be allowed, as damages, the sum of $5,171 in addition to the amount allowed under the profit accounting.

### IV.

[7] The only remaining question is that of interest. The cases are not in accord on the question of the allowance of interest on damages or on profits where infringement has occurred. It is the general rule that interest is not allowed on unliquidated damages. Tilghman v.

Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Dunkley v. Vrooman et al. (C. C. A.) 272 Fed. 468. There are cases, however, holding that interest is allowable on unliquidated damages in cases where by mere computation the amount due and the time when it should have been paid can be determined. Demotte v. Whybrow (C. C. A.) 263 Fed. 366; Faber v. City of New York, 222 N. Y. 255, 118 N. E. 610; Goodrich Co. v. Consolidated Rubber Tire Co., 251 Fed. 617, 163 C. C. A. 611.

[8] In the present case this court has made a different finding from the master and the trial court as to the amount to be allowed plaintiff-appellant as profits, and has also allowed damages. This constitutes practically a new finding by this court, and interest, we think, should date from the entry of judgment. The decree of the trial court is reversed, to the extent herein indicated, and it is directed to enter judgment for plaintiff-appellant in the sum of $24,238.13, being $19,067.13 profits and $5,171 damages, with interest at the rate of 6 per cent. from the date of the entry of judgment, together with costs.